W. J. NEWELL, Appellant, v. WILLIAM McMURRAY, Respondent.

(201 N. W. 845.)

**Personality attached to realty remains personality as between parties agreeing it should remain; evidence held to show title to furnace plant re-**

R. C. L. Supp. 730; 5 R. C. L. Supp. 627.

mained in seller until it demonstrated its capacity to heat house to buyer's satisfaction.

1. In a conversion action to recover the value of a furnace removed from a house situated upon real property which had been, prior to such removal, conveyed to the plaintiff, it is held:

(a) Parties are at liberty to make any agreement or arrangement with respect to their property as they see fit and to give to fixtures the legal character of realty and personalty at their option; and if the arrangement is such a one as would make the property personal property as between the parties, it is personal property, and may be so treated.

(b) For reasons stated in the opinion, it is held, that there is sufficient evidence in the record to support a finding that the furnace was installed in the house under an agreement, between plaintiff's grantor and the vendor of the plant, whereby the title thereto remained in the vendor until the furnace had demonstrated its capacity to heat the house to the satisfaction of the vendee.

**Fixtures — agreement to give fixtures character of personalty good against purchaser of land with notice of such agreement.**

2. An agreement to give fixtures the legal character of personalty avails as against the purchaser of the land, with actual or constructive notice of the agreement.

**Notice — "actual notice" consists in express information of fact; when person is deemed to have "constructive notice" of fact stated.**

3. Actual notice consists in express information of a fact; a person is deemed to have notice of a fact when he has actual notice of circumstances sufficient to put a prudent man upon inquiry as to the existence of such fact, and who omits to make inquiry.

**Fixtures — withdrawal from jury of testimony, showing purchaser of realty had constructive notice of agreement between purchaser's grantor and seller of furnace that title to latter remained in seller, held error.**

4. For reasons stated in the opinion, it is held, that it was error to withdraw testimony from the consideration of the jury tending to show constructive notice of the agreement that title to the furnace should not pass to the vendee, plaintiff's grantor, until after satisfactory trial of the plant.

Opinion filed December 5, 1924.

Fixtures, 26 C. J. § 39 p. 676 n. 21; § 42 p. 679 n. 47; § 46 p. 681 n. 66. Notice, 29 Cyc. p. 1113 n. 2, 5.

Appeal from the District Court of Pembina County, *Buttz,* J. Affirmed.

*J. E. Garvey,* (*H. C. De Puy,* of counsel), for appellant.

It is usually conclusive that a chattel has become part of the realty when it has been so affixed as to be incapable of severance without injury to the freehold. 11 R. C. L. 1060.

The adaptation and application to the use of that part of the property with which it is connected is generally entitled to much weight. 11 R. C. L. 1061.

While the intention of the parties immediately concerned is generally conceded the chief test, the other tests are really part of the comprehensive test of intention, and are conspicuous evidence of the intention. 11 R. C. L. 1063.

By our statute a thing is deemed to be a fixture when permanently attached to what is permanent, as by means of cement, plaster, nails, bolts or screws. Rev. Codes 1913, 5251.

Heating apparatus and furnaces are usually regarded as part of the realty. 28 C. J. 724.

Reason for Rule—Property is either real or personal, according to its nature. Contract cannot make a chattel realty, or realty a chattel . . . but if mere contract can convert potash kettles built into a wall in such a manner as to be firmly attached to the freehold, then it can also convert saw mills and granite walls into personalty. In my opinion, all fixtures, whilst attached to the freehold, are, for the time being, a part of the realty. No contract can change their nature. It is true there may be a contract allowing them to take them off. Nevada cases cited in 26 C. J. 678.

Where the circumstances relied upon as sufficient to charge a party with (constructive) notice may be equally as well referred to a different matter as the one with notice of which he is sought to be charged, they will not be deemed sufficient.

Mere rumors of the fact in the neighborhood are not (constructive) notice rendering obligatory upon the party to investigate them. 29 Cyc. 1115.

Heating plant loses its character as personal property and becomes real estate notwithstanding verbal contracts between the vendor and purchaser to the effect that the plant should remain the property of the vendor until paid for. Barber Plumbing Co. v. Ewing (Ala.) 77 So. 430, cited 13 A.L.R. 474.

Plumbing fixtures become part of realty because they could not be

removed without substantial injury and subject to prior mortgages on realty notwithstanding agreement they should retain character as personalty. Croxson v. Flynn Plumbing Co. 139 N. Y. Supp. 1093; See also Conde v. Sweeney (Cal.), 116 Pac. 319; Fryatt v. Sullivan County, 5 Hill, 116.

Constructive notice of the reserved right is not sufficient. Allis-Chalmers v. Atlantic, 52 L.R.A.(N.S.) 567, and cases cited.

*Gray & Myers,* and *Thomas D. Stack,* for respondent.

If the contract under which it was installed is recognized as a sale of the furnace upon the condition contended for by us, then its annexation to the Kirby house would not make it a part of the realty and immovable as such because the reservation of a right of removal would be implied from the terms thereof. 26 C. J. 679, § 42, and cases cited under note 47.

Furthermore an agreement between the owner of the land in favor of the owner of the article of personalty, at the time of its annexation, to the effect that such article shall retain its chattel character and be removable is almost universally held to be valid and effective as against the vendor of the chattel. 26 C. J. 676, § 39, and authorities cited under note 21.

Also an implied agreement to this effect is equally effective. 26 C. J. 677, note 22.

And this agreement, being in regard to personal property alone, need not be in writing. 26 C. J. 677 and cases cited under note 26.

Now the authorities are overwhelmingly to the effect that an agreement, such as we construe the one in controversy to be, will prevail over a subsequent purchaser of the realty with notice of the agreement either actual or constructive. 26 C. J. p. 681, § 46, note 66.

JOHNSON, J. This is a conversion action. The material facts are as follows: On the 19th day of September, 1922, one Kirby and his wife conveyed to the plaintiff, by deed of warranty, a quarter section of land in Pembina county. The deed was in the usual form. There was a house on the land in which the grantors lived, and into which the grantee and his family subsequently moved. Some time prior to the transfer, Kirby had made arrangements with the firm of McMurray Bros., of which the defendant, William McMurray, was the surviving

member at the time of the trial, for the installation of a furnace and heating plant in the house. The heating plant was installed, but the purchase price had not been paid at the time of the conveyance. About October 25, 1922, and without the knowledge of the plaintiff, the defendant McMurray removed the furnace and all pipes that were not inside the walls, together with registers that had been either fitted into the floors or screwed into the walls. The furnace was set on a cement block and connected with pipes which conducted the hot air to the different rooms. It was the claim of the defendant McMurray that the furnace was installed under an agreement of warranty, whereby it was agreed between Kirby and McMurray Bros. that if the furnace did not heat all the rooms to the satisfaction of Kirby, Kirby would not be obliged to keep the furnace, but could require the vendors to remove it; that the furnace was tried for two winters by Kirby, and was found to be unsatisfactory; that Kirby notified McMurray Bros. to remove the same, and that McMurray Bros. accordingly removed it, but not until after the transfer of the land to the plaintiff. Defendant contended at the trial that the plaintiff had notice, actual or constructive, of the agreement existing between Kirby and McMurray Bros., by reason of which the furnace, altho attached to the realty, nevertheless, by agreement between the parties, retained its character as personalty. Plaintiff alleged damages, by reason of the removal, in the sum of $500.00. The jury returned a verdict in favor of the plaintiff for $500.00.

In due time the defendant made a motion for a new trial, upon four specifications, three of which are based upon instructions to the jury, and the fourth upon the action of the trial court in striking certain testimony. The motion was granted and plaintiff appeals from the order granting the motion for a new trial.

The instructions were excepted to on the motion for a new trial on the ground that the court advised the jury, in substance, that if the plaintiff *knew* "of the contract between McMurray Bros. and Kirby * * * then he would have been bound by that contract as well as Kirby and they would be bound to take notice of the contract and the rights of McMurray Bros." It is contended that the court erred in advising the jury, in effect, that the plaintiff was not bound by the contract between the vendor and the vendee of the heating plant, unless the plaintiff *had actual knowledge* of the agreement, and that the court

should have told the jury that *constructive knowledge,* that is, actual notice of circumstances, to put a prudent man upon inquiry as to the existence of the agreement, would be sufficient and, if found, would have required the plaintiff to take notice of the contract. The assignment with reference to the striking of testimony is based upon the fact that the court, near the conclusion of the trial, withdrew, in general language, from the consideration of the jury all evidence, without specifically pointing out the testimony stricken, tending to show that plaintiff received information that Kirby was, at the time of the transfer, indebted to McMurray Bros. for the furnace and that McMurray Bros. might have a lien or a right to some sort of lien against the property because of such indebtedness; also all testimony to the effect that the plaintiff "should keep quiet and not let it be known he was buying the property so as to make it impossible for Mr. McMurray to file a lien". The court told the jury that this testimony had nothing to do with the lawsuit. In the memorandum decision filed by the court when the order granting a new trial was made, it appears that the trial judge was convinced that the evidence stricken might have been given some weight by the jury in determining whether the plaintiff had knowledge of the existence of the contract by which the character of the heating plant was fixed as personalty. The concluding paragraph of the memorandum decision is as follows:

"In any event, I was satisfied at the time of the trial that the verdict of the jury resulted in a miscarriage of justice and after carefully reading the record I am convinced that my first impression is right, and that the rights of these parties should be further investigated in another trial in which the evidence I struck out should be permitted to go to the jury."

No reference to the instructions is made in the memorandum opinion.

There lies at the threshold of this case, the important question as to the nature of the agreement between Kirby and McMurray Bros., with respect to the purchase of the furnace. If the heating plant was sold, and title thereto passed unconditionally to Kirby, it became a fixture, that is, it was permanently attached by screws, nails and cement or other means to that which was permanent, namely, to the house itself, and therefore passed to the grantee of the real property under the war-

ranty deed. Comp. Laws, 1913, § 5251. The fact that the purchase price had not been paid at the time of the conveyance would not, in such circumstances, alter the situation. The intent of the parties, as between themselves, necessarily governs. The only evidence in the record as to the agreement and intent of Kirby and McMurray Bros. is found in the testimony of Kirby, who testified as a witness in behalf of the defendant. Altho counsel for both parties and the court endeavored to obtain from him specific statements as to the facts and the actual conversation between the salesmen of McMurray Bros. and himself at the time the heating plant was purchased, the record is somewhat indefinite in this regard. He does say that "they guaranteed to heat the house to our entire satisfaction or the furnace belonged to McMurray". This was, however, stricken. He says that solicitors called at his house in behalf of defendant. He was then asked: "Q. And did you agree to take one? A. I agreed to take one under that guarantee. Q. What was the agreement you had so you would take one? A. Well, it had to heat the house. Q. You required that it heat the house? How? A. It had to heat every room in the house to our entire satisfaction." The witness then testified that he notified the defendant that the furnace did not suit him and that the defendant sent a man to the house who put in an extra cold air register, thinking that the furnace would then work. "Q. Did that change the working of the heating plant any? A. No." Witness then says that he refused to settle for the furnace and notified the defendant that the furnace was not satisfactory; that he notified the defendant to remove the furnace. "Q. Did you subsequently notify them to remove the furnace? A. I told them the furnace belonged to them". The furnace was not removed until after the transfer. This is substantially all the testimony bearing upon the question of whether the furnace was installed under a warranty.

Section 18 of the Uniform Sales Act, p. 202, Session Laws, 1917, provides that property passes to the buyer at such time as the parties to the contract intend it to be transferred; subsection 2 provides that, for the purpose of ascertaining the intention of the parties, regard must be had to the terms of the contract, the conduct of the parties, the usages of trade and the circumstances of the case. Under section 19, rules for ascertaining the intention of the parties, are stated. It is there provided, in subdivision 2 of rule 3, that when goods are delivered

to the buyer on approval, or on trial, or on satisfaction, or other similar terms, the property therein passes to the buyer when he signifies his approval or acceptance to the vendor, or does any other act adopting the transaction. We think that the testimony of the witness Kirby fairly supports the conclusion that the furnace was sold to Kirby on trial, or satisfaction, and that the property therein did not pass to Kirby at the time the equipment was installed in his house; that the testimony and the circumstances of the case fairly support the inference that it was the intention of the parties that title to the furnace should not pass until after satisfactory trial by the vendee; and that, therefore, the conclusion necessarily follows that it was not the intention of the parties that the heating plant should become a fixture. See Davidson v. Bennett, 84 Mich. 614, 48 N. W. 279.

"Parties are at liberty to make any agreement or arrangement with respect to their property that they see fit, and to give to fixtures the legal character of realty and personalty at their option; and, if the arrangement is such a one as would make the property personal property as between the parties, it is personal property, and may be so treated." Mathews v. Hanson, 19 N. D. 692, 694, 124 N. W. 1116; 26 C. J. 676. We are of the opinion that there is evidence in the record sufficient to support a finding that the furnace installed in Kirby's house did not become a fixture by reason of an express agreement to the contrary between the vendor and the vendee.

An agreement to give fixtures the legal character of personalty avails as against a purchaser of the land with notice thereof, actual or constructive. 26 C. J. 681. Actual notice consists in express information of a fact. Comp. Laws, 1913, § 7288. A person is deemed to have constructive notice of a fact when he has actual notice of circumstances sufficient to put a prudent man upon inquiry as to the existence of such fact and who omits to make inquiry. Comp. Laws, 1913, § 7290. One who purchases with such notice is not a bona fide purchaser. The vice in the instructions of the trial court was that the jury were, in substance, told that Newell was not bound by the agreement of the vendor and the vendee unless he had actual knowledge thereof. The jury should have been charged that notice as herein defined, would be sufficient, and that if the plaintiff had such notice, that is, if plaintiff had actual notice of facts or circumstances sufficient to put a prudent

man upon inquiry as to the existence of the agreement between the vendor and the vendee, giving the character of personalty to that which otherwise would have been a fixture, and he omitted to make inquiry, then plaintiff was bound to take notice of the agreement, and he did not obtain title to the furnace as a part of the realty described in the deed. See Marker v. Williams, 39 Cal. App. 674, 179 Pac. 735.

We think the trial court correctly concluded that the testimony stricken was material upon the question of whether plaintiff had constructive notice or had notice of circumstances and facts that should have put a prudent person on inquiry as to the existence of the agreement. That testimony was erroneously withdrawn from the jury.

The order of the trial court granting a new trial is affirmed.

BRONSON, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concurr.