**BURLINGTON NORTHERN RAILROAD COMPANY, INC., Plaintiff and Appellant,**

v.

**Benjamin and Elaine SCHEID, Defendants, Third-Party Plaintiffs and Appellees,**

v.

**BASIN COOPERATIVE SERVICES, Third-Party Defendant and Appellee.**

**Civ. No. 11269.**

Supreme Court of North Dakota.

Dec. 16, 1986.

Nilles, Hansen & Davies, Fargo, for plaintiff and appellant; argued by Leo F.J. Wilking.

Hagen, Quast & Alexander, Beulah, for defendants, third-party plaintiffs, and appellees; argued by Larry Quast.

Bair, Brown & Kautzmann, Mandan, for third-party defendant and appellee; argued by Thomas B. Bair.

ERICKSTAD, Chief Justice.

Burlington Northern appealed from a summary judgment dismissing its suit against the Scheids for damages caused by the Scheids' removal and sale of railroad tracks and switches on land owned by the Scheids and the Scheids' refusal to allow Burlington Northern to remove tracks remaining on the Scheids' land. We reverse and remand.

In 1944 the Northern Pacific Railway Company, Burlington Northern's predecessor, entered into an agreement with the Truax-Traer Coal Company pursuant to which railroad tracks were constructed on land owned by Truax-Traer. The tracks were constructed for the purpose of transporting coal from the Truax-Traer mine to the nearest railroad branch line. The coal was used principally as fuel for the Railroad's steam locomotives. The tracks were last used in 1966 or 1967.

The 1944 agreement provided that, while the land on which the tracks were laid was owned by Truax-Traer, certain of the tracks and switches were the personal property of Northern Pacific. The agreement also provided that it:

"shall continue until cancelled by either party on three months' written notice provided, however, that the Railway Company may cancel the contract and remove said connection if the Coal Com-

pany shall cease for a period of six months to operate its said mine."

The agreement was never recorded.

After some intervening conveyances, the Scheids became the owners of land underlying some of the tracks pursuant to a deed from Basin Cooperative Services (Basin) in 1983. In September 1983, the Scheids began removing and selling tracks and switches on the land.

In 1984 Burlington Northern filed with the Interstate Commerce Commission a "Notice of Exemption" stating its intention to abandon the line. The exemption was granted, with an effective date of February 23, 1984. In October 1984, Burlington Northern entered into a contract under which it was to receive $13,000 for the salvage value of the tracks and switches on the Scheid land. At about that time Burlington Northern learned that the Scheids had removed and sold some of the tracks. The Scheids refused to allow removal of the remaining tracks and switches and refused to compensate Burlington Northern for the value of the tracks and switches they had removed.

Burlington Northern sued the Scheids, who brought a third-party complaint against Basin. Burlington Northern filed a motion for summary judgment. The trial court determined that the tracks and switches were personal property because of the 1944 agreement and denied the motion because the question of whether or not the property had been abandoned was a genuine issue of material fact precluding summary judgment.

The Scheids moved for summary judgment dismissing Burlington Northern's suit against them. Basin moved for summary judgment in its favor on the third-party complaint. In a memorandum decision the district court stated among other things:

"In the memorandum decision on the first summary judgment motions, this Court recognized that the agreement between the two contracting parties (Northern Pacific Railway Company and Truax-Traer) designated the tracks as personal property. However, I should have noted that except for the two contracting parties and those taking title to the land with actual or constructive knowledge of this agreement, the tracks and related equipment were a fixture and appurtenance to the land and are real property. 47–01–05 and 47–01–06. *Newell vs. McMurray* [51 N.D. 901], 201 N.W. 845 [(1924)]; *Kittelson vs. Collette* [61 N.D. 768], 240 N.W. 920 [(1932)]; 35 Am Jur, *Fixtures*, Sec. 18.

"Since there is no genuine issue of fact to show that defendants or third-party defendant took with notice, actual or constructive, they are both bona fide purchasers taking free of plaintiff's claim to property. On this ground defendants and third-party defendant are entitled to summary judgment dismissing plaintiffs' claim.

"Additionally, third-party defendant is entitled to summary judgment dismissing the third-party complaint on the ground that the warranty only protected against persons claiming by or through Basin. Plaintiff does not fall in this category."

The trial court granted the Scheids' and Basin's motions for summary judgment and Burlington Northern appealed.

Burlington Northern asserts that summary judgment was improper because there are genuine issues of material fact as to whether the Scheids had actual or constructive notice of the 1944 agreement designating the tracks as personal property and as to whether, apart from notice of the 1944 agreement, the Scheids had constructive notice of Burlington Northern's outstanding interest in the tracks; and that the trial court erred in holding that ownership of the tracks is determined by the law of real property, rather than personal property law.

 Basin's conveyance of the land to the Scheids was "subject to all valid and existing exceptions, reservations, conditions, conveyances, agreements, limitations, rights-of-way and easements of record, if any." Burlington Northern contends that this provision in the deed provid-

ed the Scheids with actual notice of the 1944 agreement. Such a provision does not provide actual notice of the unrecorded 1944 agreement. In addition, we believe that the words, "of record," refer to all the matters preceding them.

Burlington Northern contends that the Scheids had constructive notice of the agreement or, apart from notice of the agreement, constructive notice of the railroad's outstanding interest in the tracks. Section 1–01–25, N.D.C.C., provides:

"1–01–25. What deemed constructive notice.—Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

Burlington Northern relies on the following statement in 92 C.J.S., Vendor & Purchaser § 328, pp. 239–40 (1955):

"[O]ne who purchases land over which is a clearly defined railroad grade, or right of way, or over which a railroad is being maintained and operated, is put on inquiry as to the rights of the railroad company, and takes the land subject to all claims and equities of which inquiry would have given him information; ..."

It asserts that, because the Scheids "failed to make inquiry upon this matter," they should be deemed to have constructive notice of the railroad's agreement that the tracks were personal property. Alternatively, it asserts that, apart from the matter of notice of the 1944 agreement, it:

"should have the opportunity to persuade a jury that the circumstances under which the Scheids took possession of their land would have put a prudent man upon inquiry as to the ownership of the various Railroad tracks still in place in 1983."

The trial court determined that the Scheids were bona fide purchasers who took the land with no actual or constructive notice of a claim by Burlington Northern. In Zimmer v. Bellon, 153 N.W.2d 757, 763 (N.D.1967), this court said:

"Whether under all existent circumstances a purchaser of real property has notice, actual or constructive, of an outstanding interest in buildings located on the purchased land is a question for jury determination. Newell v. McMurray [51 N.D. 901, 201 N.W. 845 (1924)], supra."

See also Poyzer v. Amenia Seed & Grain Co., 381 N.W.2d 192 (N.D.1986).

The Scheids have asserted that they had no knowledge that Burlington Northern had any interest in the tracks and switches; that the Truax-Traer mine was abandoned in 1965; that many of the tracks on the property were removed or covered with dirt and debris; that the rail line on their property "was not useable without major expenditure of money to clear trees and lay rails;" and that the land was used as a pasture and continuously fenced since 1970. In answer to interrogatories, Burlington Northern stated that it did not obtain any right of way in the land; that the "track was built to obtain and haul coal to be used for steam locomotives;" that the track was last used in 1966 or 1967; and that the track has not been used since then "because there is no longer a need for the coal which was used to fuel the steam locomotives;" and that since 1966 or 1967 "only a minimal amount of maintenance, if any, would have been performed" on the track.

"When the evidence is such that reasonable men can draw but one conclusion therefrom, a question of fact becomes a question of law." Malarchick v. Pierce, 264 N.W.2d 478, 479 (N.D.1978). The evidence is not such that we can determine the issue of notice as a matter of law. A reasonable jury could infer that under the circumstances the Scheids purchased the land without constructive notice of an outstanding claim to the track and switches. On the other hand, because of the enduring value of tracks and switches even when they are no longer being used at their present location, a reasonable jury could infer that the Scheids did have constructive notice. Therefore, the question of notice is

one of fact rather than of law. Summary judgment is inappropriate if conflicting inferences may be drawn from the facts. *Latendresse v. Latendresse*, 294 N.W.2d 742 (N.D.1980); *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977); *Farmers Elevator Co. v. David*, 234 N.W.2d 26 (N.D.1975). Because the question of whether or not the Scheids had constructive notice of an outstanding claim to the tracks and switches is a genuine issue of material fact precluding summary judgment, we reverse the judgment in favor of the Scheids.

Burlington Northern asserts that the trial court erred in holding that the ownership of the tracks is determined by the law of real property. It has not, however, demonstrated how its position would be improved by a determination that the tracks were personal property. "It is well settled that personal property may be abandoned, and ownership of it thereby lost." 1 C.J.S., *Abandonment* § 7, p. 13 (1985). The evidence relied upon by the Scheids to establish lack of constructive notice of Burlington Northern's interest in the tracks under the law of real property is also relevant to establishing abandonment of the tracks under the law of personal property.

█ Section 47–01–05, N.D.C.C., defines "real property" to include fixtures and appurtenances. Section 47–01–05, N.D.C.C., provides:

"*47–01–05. 'Fixtures' defined.*—A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

Section 47–01–06, N.D.C.C., provides:

"*47–01–06. 'Appurtenances' defined.* A thing is deemed to be incidental or appurtenant to land when it by right is used with the land for its benefit, as in the case of a way or watercourse, or of a passage for light, air, or heat from or across the land of another. Sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine are deemed affixed to the mine."

Burlington Northern asserts that § 47–01–06, N.D.C.C.:

"cannot be applicable to a situation in which the Railroad tracks and the land underneath them are owned by separate parties, as in such a case the tracks are not used with the land for its benefit 'by right', but by contractual agreement between the owner of the tracks and the owner of the underlying property. Surely any presumption in the statute that railway tracks are 'deemed affixed to the mine' is inapplicable when the tracks and the mine are owned by separate parties."

It has not asserted that the tracks were not used with and for the benefit of the land. It has not provided us with any citations to authority for its interpretation of the statute. Our attention has not been drawn to anything indicative of the legislative intent in using the words, "by right," and we have found none. Absent evidence of a contrary intention, we do not deem it unreasonable to conclude that the words, "by right," are sufficiently broad to encompass a contractual right.

█ With regard to the second sentence of § 47–01–06, N.D.C.C., we note that Burlington Northern has not asserted that the tracks in issue were not "used in working or developing a mine." The fact that the tracks and the mine were owned by different parties is not dispositive. *See Story Gold Dredging Co. v. Wilson*, 106 Mont. 166, 76 P.2d 73 (1938) (applying a statute virtually identical to the second sentence of § 47–01–06, N.D.C.C., and holding that placing mining machinery on mining ground and using it for working and developing the mine raised a disputable presumption that the machinery became a part of the realty). *See also St. Louis & S.F. Ry. Co. v. Beadle*, 6 Kan.App. 922, 50 P. 988 (1897); 44 Cal.Jur.3d, *Mines and Minerals* § 5 (1978) (stating that Cal.Pub.Res.

Code § 2601[1] raises a disputable presumption that mining machinery becomes a part of the realty). Parties may by agreement "give to fixtures the legal character of realty or personalty at their option." *Newell v. McMurray*, 51 N.D. 901, 201 N.W. 845, 847 (1924). *See also Teater v. Good Hope Development Corp.*, 14 Cal.2d 196, 93 P.2d 112 (1939); *Garnette v. Mankel*, 71 Cal.App.2d 783, 163 P.2d 466 (1945); 44 Cal.Jur.3d, *Mines and Minerals* § 6 (1978). "An agreement to give fixtures the legal character of personalty avails as against a purchaser of the land with notice thereof, actual or constructive." *Newell v. McMurray, supra*, 201 N.W. at 847. Therefore, whether or not an agreement to treat fixtures as personalty is binding on a purchaser of the land depends on notice of the agreement to the purchaser. Thus while it may be true, as Burlington Northern asserts, that railroad tracks are generally held to be personal property, when railroad tracks are placed on mining property a disputable presumption arises that they are part of the realty and an agreement to make them personal property is binding on a purchaser only if the purchaser has notice, actual or constructive, thereof.

█ Under the unique circumstances presented in this case, we are not persuaded that the trial court erred in determining that real property law was applicable. Because, however, differing inferences could be drawn from evidence bearing upon the issue of the Scheids' notice, summary judgment was inappropriate.

Basin filed a motion to dismiss the appeal insofar as it concerns the part of the judgment dismissing the third-party complaint. It alleged that Burlington Northern has no standing to appeal the dismissal of the Scheids' third-party complaint against Basin and that the Scheids did not appeal the dismissal of their third-party complaint against Basin.

The judgment dismissed Burlington Northern's claim against the Scheids and dismissed the Scheids' claim against Basin. The order for judgment states two grounds for dismissal of the Scheids' claim against Basin: (1) Basin, in common with the Scheids, was a bona fide purchaser without notice of the 1944 agreement and took the property free of Burlington Northern's claim; and (2) Basin's warranty deed to the Scheids "only protected against persons claiming by or through it, Plaintiff does not fall in this category."

Burlington Northern does not oppose the motion. The Scheids oppose the motion if we determine that real property law applies, but do not oppose the motion if we determine that personal property law applies.

█ An appellee who has not cross-appealed "may not seek a more favorable result on appeal than he received in the trial court." *Tkach v. American Sportsman, Inc.*, 316 N.W.2d 785, 787 n. 1 (N.D. 1982). *See also Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662 (5th Cir.1983); *Duriso v. K-Mart No. 4195, Div. of S.S. Kresge Co.*, 559 F.2d 1274 (5th Cir.1977); 9 *Moore's Federal Practice* ¶¶ 204.11[1], 204.11[4] (1986). The exception noted in *Kuhn v. Kuhn*, 301 N.W.2d 148, 151 (N.D. 1981), that "when the rights of all the parties are interwoven or when the erroneous legal decision of the lower court forms the basis for all of the parties' rights the nonappealing party is entitled to the benefit of the appellate court determination," is inapplicable here. The rights of all of the parties are not interwoven. The trial court's erroneous legal decision that there was no genuine issue of fact with regard to the Scheids' and Basin's notice of Burlington Northern's claim formed but one of two independent bases for the dismissal of the third-party complaint. The Scheids have neither demonstrated sufficient cause to

---

1. California Pub.Res.Code § 2601 formerly was Cal.Civ.Code § 661, which, along with Cal.Civ. Code § 662, shares with § 47–01–06, N.D.C.C., a common derivation from the Field Code. For a brief statement of some of the historical development of the Field Code and the precedential value of California decisions construing Field Code provisions, *see Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 476–77 (N.D.1986).

deviate from the general rule nor alleged any error in the trial court's rulings. Basin's motion to dismiss the appeal insofar as it concerns the part of the judgment dismissing the third-party complaint is granted.

For the reasons stated, Basin's motion to dismiss is granted, the summary judgment in favor of the Scheids is reversed, and the case is remanded for further proceedings.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.