Filed 8/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 154

Brigham Oil and Gas, L.P., Plaintiff and Appellant

v.

Lario Oil & Gas Company, Defendant and Appellee

and

Murex Petroleum Corporation, Defendant

Lario Oil & Gas Company, Third Party Plaintiff and Appellees

v.

Jon Avery, Third Party Defendant

and

Georgette O. Navarro and The Triple T, Inc., Third Party Defendants

Intervenors and Appellants

No. 20100211

Brigham Oil and Gas, L.P., Plaintiff and Appellee

v.

Lario Oil & Gas Company, Defendant and Appellee

and

Murex Petroleum Corporation, Defendant

Lario Oil & Gas Company, Third Party Plaintiff and Appellees

v.

Jon Avery, Third Party Defendant

and

Georgette O. Navarro and Third Party Defendants

The Triple T, Inc., Intervenors and Appellants

No. 20110016

Appeals from the District Court of Mountrail County, Northwest Judicial District, the Honorable William W. McLees, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Jon Bogner, P.O. Box 1173, Dickinson, N.D. 58602-1173, for plaintiff, appellant, and appellee Brigham Oil and Gas.

Sara Kaye Sorenson, P.O. Box 458, West Fargo, N.D. 58078-0458, for third party defendants, intervenors, and appellants Georgette O. Navarro and The Triple T, Inc.

Dennis Edward Johnson, P.O. Box 1260, Watford City, N.D. 58854-1260, for defendant, third party plaintiff, and appellee Lario Oil & Gas Company.

Brigham Oil and Gas, L.P. v. Lario Oil & Gas Co.

Nos. 20100211 & 20110016

VandeWalle, Chief Justice.

[¶1] Brigham Oil and Gas, L.P. (“Brigham”), appealed from a partial judgment dismissing its action against Lario Oil & Gas Company (“Lario”) and Murex Petroleum Corporation (“Murex”) seeking oil and gas production payments based on a claimed leasehold interest in certain mineral acres in Mountrail County.  The Triple T, Inc. (“Triple”), and Christine Thompson, as sole trustee of the Navarro 2009 Living Trust Agreement, appealed from an order denying their motions to intervene and to vacate the judgment.  We conclude the district court did not err in ruling as a matter of law that Brigham had no leasehold interest in the claimed mineral acres.  We further conclude the court did not err in denying Triple and Thompson’s motions.  We affirm.

I

[¶2] In 1989 Helen Testerman, a California resident, executed a will devising her “share of the Mineral Rights in North Dakota to my nephew, John H. Avery.”  Testerman also devised property to her children, Monte C. Testerman and Colleen D. Pando, and to her niece, Georgette O. Navarro.  Testerman subsequently inherited additional mineral rights in Mountrail County from her brother when he died in 1996, and the ownership of these mineral rights is the subject of this lawsuit.

[¶3] Testerman died on January 28, 2004, and Pando filed a petition in a California court seeking to admit the will to probate and requesting that she be appointed executor of Testerman’s estate.  In May 2004, the California probate court appointed Pando executor and authorized independent administration of the estate.  On April 6, 2005, Pando filed a final inventory and appraisal with the probate court, but the inventory and appraisal did not expressly mention any North Dakota mineral rights.  On April 11, 2005, Pando filed with the probate court a “Petition for Final Distribution on Waiver of Accounting, Allowance of Executrix’s Commission, Allowance of Statutory Attorney’s Fees, and Report of Executrix” along with waivers of the filing and settlement of the final account signed by Avery, Monte Testerman, and Navarro.

[¶4] On May 4, 2005, Navarro wrote a letter to Pando and Pando’s attorney stating she had a copy of the 1997 personal representative’s deed of distribution of the additional mineral rights from Testerman’s brother’s estate and asserting that Testerman had written on the top of the deed:  “these mineral rights go to Georgette Navarro by Helen Testerman.”  In the letter Navarro said “[s]ince my aunt clearly intended the most recent mineral rights to go to me, how is this being handled?”  At that time Navarro took no further action concerning Testerman’s alleged handwritten comments on the top of the deed.

[¶5] On June 17, 2005, the California probate court issued an “Order on Petition of Final Distribution on Waiver of Accounting” approving the petition and ordering that the “administration of the estate is brought to a close.”  The order distributed “mineral rights in North Dakota” to Avery, $6,000 to Navarro, and the residue of the estate equally to Pando and Monte Testerman.  On August 25, 2007, Avery entered into an oil and gas lease with the Dublin Company (“Dublin”) covering the subject property and other lands located in Mountrail County.  The lease was recorded on September 5, 2007, with the Mountrail County Clerk and Recorder.  Dublin subsequently assigned this lease to Lario.

[¶6] On July 10, 2008, more than three years after the California probate court issued its final order distributing Testerman’s estate, Pando filed in Mountrail County district court an application for informal probate of Testerman’s estate and sought appointment as personal representative, which was granted.  On September 16, 2008, Avery filed a petition with the Mountrail County district court seeking an order distributing Testerman’s “mineral rights in North Dakota” in accordance with the June 2005 California probate court order of final distribution.  On September 18, 2008, Navarro filed with the California probate court a motion for an order to set aside the prior order of final distribution contending the failure of the court to consider Testerman’s alleged handwritten directive, or “holographic codicil,” was the result of “extrinsic fraud or mistake.”  Navarro asked the court to issue a revised order distributing the subject property in accordance with Testerman’s handwritten directive.  Navarro claimed she did not act earlier because she relied on statements of Pando’s attorney that the handwritten directive “did not count.”  On September 29, 2008, Navarro filed with the Mountrail County district court a petition for an order restraining the personal representative and an objection to the petition for an order distributing estate property, claiming no estate property should be conveyed in North Dakota until the California probate court resolved her pending motion to set aside the order of final distribution.  On October 15, 2008, Navarro filed with the California probate court a supplement to her motion containing additional materials in support of her claim.

[¶7] On October 21, 2008, Navarro entered into an oil and gas lease with Triple covering the subject property “and other lands” located in Mountrail County.  This lease was recorded on October 31, 2008, and Triple subsequently assigned an 80 percent net revenue interest in the lease to Brigham.

[¶8] On November 5 and 18, 2008, Avery and Navarro executed an agreement which purported to resolve the issue over ownership of the Mountrail County mineral rights.  Avery and Navarro stipulated that Avery would receive 100% of the mineral interests Testerman had inherited from her father, and Avery would receive 25% and Navarro would receive 75% of the mineral interests Testerman inherited from her brother, which is the property at issue in this case.  Avery and Navarro did not provide notice of the agreement to Dublin, Triple, Brigham or Lario, and those companies were not parties to the agreement.  As a result of the agreement, the California probate court did not adjudicate the validity of Testerman’s alleged “holographic codicil.”  The California probate court record lists the matter as “settled,” and Navarro’s motion was taken off the court’s calendar on January 8, 2009.

[¶9] On November 4, 2008, Pando, as personal representative of Testerman’s estate, executed deeds of distribution conveying Testerman’s interest in the subject property to Avery and Navarro in the percentages set forth in their agreement.  The deeds were recorded on December 12, 2008.  The agreement was also filed with the Mountrail County district court in counterparts on November 24 and December 5, 2008.

[¶10] In June 2009, Brigham commenced this action against Lario and Murex.  Brigham alleged that it is entitled to a percentage of the production from the subject mineral acres through the oil and gas lease executed by Navarro in October 2008, that Lario was wrongfully claiming Brigham’s interest in the property through the oil and gas lease executed by Avery in August 2007, and that Murex was wrongfully withholding production payments from Brigham relating to wells located on the subject property.  Lario alleged that its oil and gas lease with Avery covered the subject mineral interests and counterclaimed against Brigham for slander of title.  Lario also filed third-party complaints against Navarro and Avery for slander of title and breach of warranty.  Brigham and Lario both moved for summary judgment.  The district court granted summary judgment in favor of Lario, concluding “as a matter of law, that the oil and gas lease which Dublin took from Avery (and subsequently assigned to Lario) is the controlling lease here, and, that Brigham has no interest in the oil and gas leasehold estate in the subject property.”  The court also dismissed Lario’s third-party complaints and its counterclaim against Brigham, making the partial judgment final for purposes of appeal.  
See
 
Gillmore v. Morelli
, 472 N.W.2d 738, 740 n.2 (N.D. 1991) (partial judgment not conclusive until a final judgment disposing of all claims is entered).

[¶11] Navarro died.  Approximately one year after the summary judgment hearing, nine months after summary judgment was granted, six months after judgment was entered, and more than four months after Brigham filed its appeal from the summary judgment, Triple and Thompson, as sole trustee of the Navarro 2009 Living Trust Agreement, filed motions to intervene and to vacate the judgment.  The district court denied the motions, finding them both untimely.  These cases were consolidated for purposes of appeal.

II

[¶12] Brigham argues the district court erred in determining that Lario has the controlling lease and that Brigham has no interest in the oil and gas leasehold estate in the subject property.

[¶13] The standard for reviewing a summary judgment is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law.  A district court’s decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

Kost v. Kraft
, 2011 ND 69, ¶ 4, 795 N.W.2d 712 (quoting 
Bragg v. Burlington Res. Oil & Gas Co. LP
, 2009 ND 33, ¶ 5, 763 N.W.2d 481).  Brigham does not claim summary judgment was improper because genuine issues of material fact exist.

[¶14] The district court’s lengthy decision determined that although a judgment of a foreign court does not transfer title to real property in North Dakota, 
see
 
Wacker Oil, Inc. v. LoneTree Energy, Inc.
, 459 N.W.2d 381, 382 (N.D. 1990), North Dakota courts were required to accept as “determinative” the California probate court’s 2005 final order of distribution under N.D.C.C. § 30.1-15-08 (U.P.C. § 3-408).  The court determined Avery did not have a “mere expectancy,” but had an actual ownership interest in Testerman’s “share of the Mineral Rights in North Dakota” immediately upon her death subject to administration of the estate under N.D.C.C. § 30.1-12-01 (U.P.C. § 3-101).  The district court determined Avery inherited all of Testerman’s mineral rights at the time of her death and resolution of this issue was not dependent upon a judicial adjudication of the validity of the “holographic codicil.”  In so ruling, the court noted Navarro had accepted a $6,000 distribution from the estate and signed a waiver to the filing and settlement of the final account, and in any event, her attempt to set aside the 2005 final distribution for extrinsic fraud and mistake was likely untimely under California law.  The court then determined that under N.D.C.C. §§ 30.1-20-12 (U.P.C. § 3-912) and 30.1-22-01 (U.P.C. § 3-1101) the settlement agreement was binding only between Avery and Navarro and was not binding upon Brigham and Lario because those companies “were not informed that such an agreement was forthcoming.”  The court concluded “as a matter of law, that the oil and gas lease which Dublin took from Avery (and subsequently assigned to Lario) is the controlling lease here, and, that Brigham has no interest in the oil and gas leasehold estate in the subject property.”

A

[¶15] We begin by addressing the two most crucial rulings made by the district court.  First, the court ruled Avery inherited and had an interest in all of Testerman’s North Dakota mineral rights at the time of her death subject to administration.  “Property passes upon death, not upon distribution.”  
Feickert v. Frounfelter
, 468 N.W.2d 131, 132 (N.D. 1991).  Section 30.1-12-01 (U.P.C. § 3-101), N.D.C.C., provides “[u]pon the death of a person, the decedent’s real and personal property devolves to the persons to whom it is devised by the decedent’s last will . . . , subject to . . . administration.”  Because Testerman’s will devised her “share of the Mineral Rights in North Dakota” to Avery, Avery had an ownership interest, rather than a “mere expectancy,” in the subject mineral rights upon Testerman’s death subject to administration.  Consistent with Testerman’s will, the California probate court’s order of final distribution distributed “mineral rights in North Dakota” to Avery.

[¶16] However, North Dakota law applies to “property of nonresidents located in this state.”  N.D.C.C. § 30.1-02-01(2) (U.P.C. § 1-301).  “‘It is settled in this State that a court decree or court judgment of another state in its determination of property rights may not directly affect or transfer title to real property situate in North Dakota.’” 
Wacker Oil, Inc.
, 459 N.W.2d at 382 (quoting 
Rozan v. Rozan
, 129 N.W.2d 694, 700 (N.D. 1964)); 
see also
 
In re Reynolds’ Will
, 85 N.W.2d 553, 562 (N.D. 1957).  Initiation of ancillary probate proceedings in North Dakota was required to formally transfer title to the subject mineral rights to Avery.  
See generally
 
Stratton v. Rose
, 484 N.W.2d 274, 275-77 (N.D. 1992).  Section 30.1-15-08 (U.P.C. § 3-408), N.D.C.C., provides that a “final order of a court of another state determining testacy, the validity or construction of a will, made in a proceeding involving notice to and an opportunity for contest by all interested persons must be accepted as determinative by the courts of this state if it includes, or is based upon, a finding that the decedent was domiciled at the time of death in the state where the order was made.”  This statute supports the general purpose of using domicilary law to unify succession of property located in different states.  
See
 
Estate of Burshiem
, 483 N.W.2d 175, 179 n.9 (N.D. 1992).  Under N.D.C.C. § 30.1-15-08 (U.P.C. § 3-

408), the district court was required to accept the California probate court’s final order construing Testerman’s will.  Because “a party may seek specific performance of a judicially created obligation to convey real property situated in North Dakota, and a decree of a court of this state ordering such a conveyance could be made self-

executing,” 
Wacker Oil, Inc.
, 459 N.W.2d at 383, Avery would have been entitled to seek specific performance of the California probate court’s final order distributing Testerman’s “mineral rights in North Dakota” to Avery.

[¶17] On September 16, 2008, Avery filed a petition with the Mountrail County district court to distribute the North Dakota property in accordance with Testerman’s will and the California probate court’s final order of distribution, but the petition was never heard.  Consequently, we conclude the district court correctly ruled Avery inherited and had an interest in all of Testerman’s North Dakota mineral rights at the time of her death subject to ancillary administration of the estate in North Dakota to transfer legal title to Avery.

[¶18] Second, the district court ruled the settlement agreement between Avery and Navarro was not binding on Brigham or Lario.  “A decedent’s successors may agree in a written contract 
executed by all who are affected by its provisions
 to alter the interests to which they are entitled under a will, and the personal representative shall abide by the terms of the agreement.”  
Estate of Dionne
, 2009 ND 172, ¶ 10, 772 N.W.2d 891 (emphasis added); 
see also
 N.D.C.C. § 30.1-20-12 (U.P.C. § 3-912).  Section 30.1-22-01 (U.P.C. § 3-1101), N.D.C.C., further provides:

A compromise of any controversy
 as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity, or effect of any governing instrument, the rights or interests in the estate of the decedent, of any successor, or the administration of the estate, if approved in a formal proceeding in the court for that purpose, 
is binding on all the parties thereto
, including those unborn, unascertained, or who could not be located.  An approved compromise is binding even though it may affect a trust or an inalienable interest.  A compromise does not impair the rights of creditors or of taxing authorities who are not parties to it.

(Emphasis added).  All interested persons or their representatives must be given notice of a proposed compromise.  
See
 N.D.C.C. § 30.1-22-02(3) (U.P.C. § 3-1102); 
see generally
 
Estate of Hedstrom
, 472 N.W.2d 454, 456 (N.D. 1991).  These statutes are corollaries to the general principle that an agreement to alter parties’ interests in property are not binding upon subsequent good faith purchasers or mortgagees who have no actual or constructive notice of the agreement.  
See
 
Marsh v. Binstock
, 462 N.W.2d 172, 175 n.2 (N.D. 1990); 
Lundgren v. Mohagen
, 426 N.W.2d 563, 565 (N.D. 1988); 
Burlington N. R.R. Co., Inc. v. Scheid
, 398 N.W.2d 114, 119 (N.D. 1986).  “A settlement determining property disputes cannot stand . . . if rights of persons not parties to the settlement are affected.”  M. Cross., Annot., 
Family settlement of testator’s estate
, 29 A.L.R. 3d 8, 52 (1970).

[¶19] Here, Avery’s oil and gas lease with Lario’s predecessor, Dublin, was recorded before Navarro entered into the oil and gas lease with Brigham’s predecessor, Triple, before Avery and Navarro entered into their settlement agreement, and before Pando executed deeds of distribution conveying Testerman’s interest in the subject property to Avery and Navarro in the percentages set forth in their agreement.  Avery and Navarro had personal knowledge of their respective leases to Dublin and Triple.  Moreover, under N.D.C.C. § 47-19-19, the recording of Avery’s lease with Dublin was notice of the contents of the lease as to all persons.  
See, e.g.
, 
Norman Jessen & Assocs., Inc. v. Amoco Prod. Co.
, 305 N.W.2d 648, 652 (N.D. 1981).  Brigham and Lario, successors in interest who are certainly affected by the provisions of the compromise agreement, were not notified of the agreement and did not execute the agreement. Only Avery and Navarro executed the agreement.  We conclude the district court correctly ruled as a matter of law that under N.D.C.C. §§ 30.1-20-12 (U.P.C. § 3-912) and 30.1-22-01 (U.P.C. § 3-1101), although the agreement is binding on Avery and Navarro, it is not binding on Brigham or Lario.  The deeds of distribution issued by Pando were ineffective to alter the interests of anyone not a party to the agreement.

[¶20] We address Brigham’s arguments against this backdrop.

B

[¶21] Brigham argues the district court erred in determining Navarro did not present the “holographic codicil” to the California court during the original probate proceedings in 2004 and 2005.

[¶22] According to Brigham, Navarro presented the document to Pando, the executor, and her attorney and, under N.D.C.C. § 30.1-18-03(1) (U.P.C. § 3-703), Pando had a duty to “settle and distribute the estate . . . in accordance with the terms of any probated and effective will.”  However, the record establishes that the “holographic codicil” was not presented to the California probate court until Navarro sought to set aside the order of final distribution in 2008.  In any event, the major problem with Brigham’s argument is that the “holographic codicil” has never been probated or judicially determined to be an “effective will” in either California or North Dakota.  The agreement between Avery and Navarro prevented resolution of that issue in the California probate court.  Moreover, even if the document had been presented to the California probate court in 2004 or 2005, Navarro signed a waiver of the filing and settlement of the final account which did not include the alleged devise contained in the “holographic codicil.”

[¶23] We conclude the district court did not err in determining Navarro failed to present the document to the California probate court before entry of the order of final distribution.

C

[¶24] Brigham argues the district court erred in determining that the subject mineral interests vested only in Avery upon Testerman’s death because Navarro had presented the “holographic codicil” to Pando, the executor.

[¶25] As we discussed above, Navarro did not present the “holographic codicil” to the California court.  At the time the California probate court entered its final order of distribution, the only document expressing testamentary intent before the court was Testerman’s will.  There has not been a judicial resolution of the validity of the “holographic codicil.”  Therefore, Brigham’s claim that Navarro had an interest in the subject minerals must necessarily be premised on the settlement agreement Navarro entered into with Avery several years after the California probate court’s order of final distribution.  That agreement was ineffective to alter the interests of Brigham and Lario in the subject mineral interests.

[¶26] We conclude the district court did not err in ruling the subject mineral interests passed only to Avery upon Testerman’s death.

D

[¶27] Equitable title is “[a] title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title.”  
Black’s Law Dictionary 
1622 (9th ed. 2009); 
see also
 
Green v. Gustafson
, 482 N.W.2d 842, 849 (N.D. 1992).  Avery entered into an oil and gas lease with Dublin in August 2007 and Navarro entered into an oil and gas lease with Triple in October 2008.  At the times these leases were executed, neither Avery nor Navarro had formal legal title to the subject mineral interests.  When Avery entered into and recorded the Dublin lease, Avery had an ownership interest and equitable title to the subject mineral interests giving him the right to acquire formal legal title through ancillary probate proceedings.  However, Navarro’s bare formal legal title acquired through the personal representative’s deed of distribution is based on the settlement agreement between Avery and Navarro which could not affect the current interests of persons who were not parties to the agreement.  Dublin acquired the lease from Avery who had an ownership interest and equitable title at the time of execution.  Triple subsequently acquired its lease from Navarro who at the time of execution had neither equitable title, record title, nor legal title to the subject mineral interests.  Under these circumstances, although Avery and Navarro may have a binding agreement between themselves to share the proceeds from the subject mineral interests, the Dublin lease controls.

[¶28] We conclude the district court correctly ruled as a matter of law that “the oil and gas lease which Dublin took from Avery (and subsequently assigned to Lario) is the controlling lease here, and, that Brigham has no interest in the oil and gas leasehold estate in the subject property.”

E

[¶29] We do not address the other issues raised by Brigham because those arguments are based upon premises which we have rejected, those arguments do not affect the decision, or those arguments are without merit.

III

[¶30] Thompson and Triple argue the district court erred in denying their motions to intervene as a matter of right under N.D.R.Civ.P. 24(a) and to vacate the judgment under N.D.R.Civ.P. 60(b).

A

[¶31] Thompson and Triple contend they were entitled to intervene as a matter of right.

[¶32] Intervention as a matter of right is allowed under N.D.R.Civ.P. 24(a), which provides:

Upon timely application anyone must be permitted to intervene in an action if: (i) a statute confers an unconditional right to intervene; or (ii) the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.

In considering whether a party may intervene as a matter of right under N.D.R.Civ.P. 24(a), we review a district court’s findings of fact under the clearly erroneous standard of review.  
Skogen v. Hemen Twp. Bd. of Twp. Supervisors
, 2010 ND 92, ¶ 7, 782 N.W.2d 638.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made.  
Pember v. Shapiro
, 2011 ND 31, ¶ 11, 794 N.W.2d 435.  The ultimate question whether a party has a right to intervene is a question of law that is fully reviewable on appeal.  
Eichhorn v. Waldo Twp. Bd. of Supervisors
, 2006 ND 214, ¶ 13 723 N.W.2d 112.

[¶33] The district court denied the motion to intervene because it was untimely.  Thompson and Triple argue they should have been allowed to intervene because a judgment which adversely affects an indispensable party is void and because there was no finding that the existing parties would have been prejudiced by the intervention.  For purposes of analysis, we assume but do not decide that Thompson and Triple meet the requirements for intervention as a matter of right.

[¶34] Because N.D.R.Civ.P. 24(a) is derived from and is substantially similar to F.R.Civ.P. 24(a), we may look to federal interpretations of the rule for interpreting our rule.  
Fisher v. Fisher
, 546 N.W.2d 354, 355 (N.D. 1996).  “Whether intervention is sought permissively or as of right, Rule 24 requires that the application for intervention be ‘timely.’” 
United States v. Marion Cnty. Sch. Dist.
, 590 F.2d 146, 148 (5th Cir. 1979).  Because a motion to intervene as a matter of right must be “timely,” it would be anomalous to view a judgment entered without the participation of an indispensable party as void.  Federal authority is in agreement.

[¶35] “The only difference between intervention of right under Rule 24(a)(2) and joinder under Rule 19(a)(2)(i) is which party initiates the addition of a new party to the case.”  
New York State Ass’n for Retarded Children, Inc. v. Carey
, 438 F. Supp. 440, 445 (E.D.N.Y. 1977); 
see also
 
MasterCard Int’l Inc. v. Visa Int’l Serv. Ass’n, Inc.
, 471 F.3d 377, 390 (2d Cir. 2006); 
Premier Foods of Bruton, Inc. v. City of Orlando
, 192 F.R.D. 310, 312 (M.D. Fla. 2000).  Consequently, interpretations of indispensable party principles under F.R.Civ.P. 19(a) are equally applicable in interpreting indispensable party principles under F.R.Civ.P. 24(a).  
See
 
MasterCard Int’l Inc.
, 471 F.3d at 390.

[¶36] The Advisory Committee Notes to the 1966 amendment to F.R.Civ.P. 19 explain:

Even if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it through proper service of process.  But the court can make a legally binding adjudication only between the parties actually joined in the action.  It is true that an adjudication between the parties before the court may on occasion adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent recovery by the absent person.  These are factors which should be considered in deciding whether the action should proceed, or should rather be dismissed; but they do not themselves negate the court’s power to adjudicate as between the parties who have been joined.

The authors observe in 7 Wright, Miller, and Kane, 
Federal Practice and Procedure Civil 3d
 § 1611, at 166-67, 169 (2001):

Because an objection to the failure to join a person who should be regarded as indispensable under Rule 19(b) may be raised as late as on an appeal from a final judgment or by the court on its own motion, the impression is created that a failure to join is jurisdictional, since ordinarily only jurisdictional defects are treated in this fashion.  Thus, it is not surprising that cases can be found that speak of nonjoinder as ousting the court of jurisdiction.  Since the indispensable-party doctrine is equitable both in its origin and nature, however, scholarly commentary as well as the vast majority of courts reject this “jurisdictional” characterization. . . .

The use of the “jurisdiction” label should be discontinued because it has caused considerable confusion . . .  [I]t is important to recognize that the court does have jurisdiction both over the parties properly before it and the subject matter of the action, even though the indispensable party cannot be joined.  The decision by the court not to proceed is based on equitable considerations alone.

(Footnotes omitted).  
See also
 4 James Wm. Moore, 
Moore’s Federal Practice
 § 19.02 [4][d] (3d ed. 2011).  Therefore, courts conclude that the failure to join an indispensable party or the failure to allow an indispensable party to intervene does not render a judgment void.  
See, e.g.
, 
Koehler v. Dodwell
, 152 F.3d 304, 309 n.7 (4th Cir. 1998); 
Thomas, Head and Greisen Emps. Trust v. Buster
, 95 F.3d 1449, 1460 n.8 (9th Cir. 1996); 
Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.
, 624 F.2d 822, 825-26 (8th Cir. 1980); 
Browning v. Placke
, 698 S.W.2d 362, 363 (Tex. 1985).

[¶37] Thompson and Triple rely on 
Schroeder v. Burleigh Cnty. Bd. of Comm’rs
, 252 N.W.2d 893 (N.D. 1977), for the proposition that a judgment which adversely affects an indispensable party is void.  In 
Schroeder
, Krueger obtained a zoning change for a portion of his land.  
Id.
 at 895.  The Schroeders, owners of nearby land, appealed and in a proceeding in which Krueger was not a party, the district court overturned the zoning change.  
Id.
  Krueger intervened, but the district court denied his N.D.R.Civ.P. 60(b) motion to vacate the judgment.  
Schroeder
, 252 N.W.2d at 895.  On appeal, this Court interpreted N.D.R.Civ.P. 19(a) on joinder of a necessary party, and quoting 
Hidden Lake Dev. Co. v. District Court
, 515 P.2d 632, 635 (Colo. 1973), stated “‘[u]nder modern authorities, a judgment which adversely affects an indispensable party who is not joined is void.’”  
Schroeder
, 252 N.W.2d at 897.  This Court concluded that “a successful applicant for a zoning change should be joined as a party to an appeal from that decision by an aggrieved person, and any judgment rendered on appeal in his absence is invalid.”  
Id.
  This Court further held that the district court “abused its discretion in failing to grant Krueger’s Rule 60(b) motion for relief from its order of judgment rendered in a proceeding in which Krueger was not made a party and was not present to protect his interests.”  
Schroeder
, 252 N.W.2d at 898.

[¶38] The 
Schroeder
 Court’s use of the language “void” and “invalid” in describing the effect of a judgment rendered in the absence of an indispensable party is unfortunate because it maintains, contrary to now well-settled law, that an indispensable party’s absence affects the district court’s jurisdiction to proceed.  To the extent 
Schroeder
 holds that the absence of an indispensable party is a jurisdictional defect that renders a judgment void, rather than a defect that a court may remedy in the exercise of its equitable powers, we overrule the decision.  Assuming Thompson and Triple are indispensable parties, we conclude the district court was not required to allow them to intervene to retain jurisdiction to render judgment, even though that judgment may not be binding on them.  
See
 
Wacker Oil, Inc.
, 459 N.W.2d at 383.  There is no dispute that the court had personal jurisdiction over the existing parties and subject matter jurisdiction over their dispute.

[¶39] Thompson and Triple argue the district court should have allowed them to intervene based on this Court’s precedents permitting post-judgment intervention and because the court did not find that the existing parties would be prejudiced by the intervention.

[¶40] “Intervention has historically been liberally granted in North Dakota.”  
Eichhorn
, 2006 ND 214, ¶ 13, 723 N.W.2d 112.  Under some circumstances, this Court has held that a post-judgment motion to intervene is not too late, even though “‘[i]ntervention after judgment is unusual and not often granted.’”  
Quick v. Fischer
, 417 N.W.2d 843, 845 (N.D. 1988) (quoting 3B 
Moore’s Federal Practice
 ¶ 24.13, p. 24-154 (1987)); 
see also
 
In re C.R.H.
, 2000 ND 222, ¶¶ 6-8, 620 N.W.2d 175.  The authors state in 7C Wright, Miller, and Kane, 
Federal Practice and Procedure Civil 3d
 § 1916, at pp. 541-571 (2007):

The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.  If prejudice is found, the motion will be denied as untimely.  Conversely, the absence of prejudice supports finding the motion to be timely. . . .  Delay is not the only possible form of prejudice to the existing parties, but if the intervention will not delay the termination of the litigation intervention ordinarily will be allowed.

There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant.  Motions for intervention after judgment ordinarily fail to meet this exacting standard and are denied.  As was stated by one court:

The rationale which seems to underlie this general principle, however, is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court.

If neither of these results would occur the mere fact that judgment already has been entered should not by itself require a motion for intervention to be denied.

(Footnotes omitted).

[¶41] Here, after noting that a notice of appeal had already been filed by Brigham in the main action more than four months before the motion to intervene was brought, the district court reasoned:

The undisputed evidence indicates that both Georgette O. Navarro (“Navarro”), who is now deceased, and The Triple T, Inc. (“The Triple T”), were aware of the litigation between Brigham and Lario relative to their competing oil and gas leases on the subject property.  In fact, the Intervenors have acknowledged that they had “notice of the proceedings” in this case.

The Court also takes note of the fact that representatives of both Navarro and The Triple T were present at the November 17, 2009, summary judgment hearing at the Mountrail County Courthouse, Stanley, North Dakota.  In fact, Navarro’s representative attempted to intercede in the proceedings following closing arguments by counsel.  However, it appears that this was the first time that the Intervenors expressed any desire to be heard in this case—and, following this hearing, they waited (without any explanation for the delay in asserting their rights) until November of 2010 to assert that the Partial Judgment should be vacated and that they should be allowed to intervene so as to protect their interests in the subject property.  By that time (i.e., November of 2010), this Court’s Opinion had been of record for approximately nine (9) months, and the Partial Judgment had been in place for approximately six (6) months.

[¶42] Unlike the intervenor in 
In re C.R.H.
, 2000 ND 222, ¶ 7, 620 N.W.2d 175, Thompson and Triple are not attempting to raise an issue that “implicates important policy issues,” but seek to simply relitigate issues resolved in the main action.  Unlike the intervenor in 
Quick
, 417 N.W.2d at 845, Thompson and Triple have not moved for intervention “promptly after learning of the entry of judgment, within the time for appeal,” but sought to intervene months after learning of the court’s decision and after an appeal from that decision had already been taken.  Although the district court did not use the term “prejudice” in its decision, the prejudice to the existing parties and the interference with the orderly processes of the court is apparent from the record.  No explanation has been given for the delay and intervention would have required withdrawal of the appeal, relitigation of the issues, and other expensive delays at a cost to the existing parties and to the orderly processes of the court.

[¶43] We conclude the district court’s findings of fact are not clearly erroneous and the court did not err in denying Thompson and Triple’s motion to intervene.

B

[¶44] Thompson and Triple argue the district court erred in denying their motion to vacate the judgment under N.D.R.Civ.P. 60(b).

[¶45] Thompson and Triple rely on N.D.R.Civ.P. 60(b)(iv), which allows relief from a judgment if “the judgment is void.”  Because the judgment is not void, Thompson and Triple cannot succeed in having the judgment vacated on this ground.  
See, e.g.
, 
Buster
, 95 F.3d at 1460 n.8; 
Great Lakes Carbon Corp.
, 624 F.2d at 825.

[¶46] Thompson and Triple also relied on N.D.R.Civ.P. 60(b)(vi), which allows a district court to vacate a judgment for “any other reason justifying relief from the operation of the judgment.”  A district court’s decision on a N.D.R.Civ.P. 60(b) motion will not be reversed on appeal absent an abuse of discretion.  
Vanderscoff v. Vanderscoff
, 2010 ND 202, ¶ 9, 790 N.W.2d 470.  A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law.  
Id.

[¶47] Here, the district court determined no “extraordinary circumstances” were presented to warrant vacating the judgment and the motion was not made within a reasonable time after entry of the partial judgment, based upon the same considerations it used to deny the motion to intervene.  We conclude the district court did not abuse its discretion in denying the N.D.R.Civ.P. 60(b) motion for relief from judgment.

[¶48] In view of our disposition of their claims, it is unnecessary to address the other issues raised by Thompson and Triple.

IV

[¶49] The judgment and order are affirmed.

[¶50] Gerald W. VandeWalle, C.J.

Daniel J. Crothers

Dale V. Sandstrom

Mary Muehlen Maring

Carol Ronning Kapsner