# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 12

Minn-Kota Ag Products, Inc.,          Appellant

      v.

North Dakota Public Service Commission,
Dakota Valley Electric Cooperative, Inc.,
and Otter Tail Power Company,          Appellees

### No. 20190127

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by VandeWalle, Justice.

Loren L. Hansen, Minneapolis, MN, for appellant.

Zachary E. Pelham, Special Assistant Attorney General, Bismarck, ND, for appellee North Dakota Public Service Commission.

Kimberly J. Radermacher, LaMoure, ND, for appellee Dakota Valley Electric Cooperative, Inc.

## Minn-Kota Ag Products, Inc. v. N.D. Public Service Commission
## No. 20190127

**VandeWalle, Justice.**

[¶1]  Minn-Kota Ag. Products, Inc. appealed from a district court order dismissing Minn-Kota's appeal of findings of fact, conclusions of law and order issued by the North Dakota Public Service Commission (PSC) for lack of standing and affirming an administrative law judge's (ALJ) order denying Minn-Kota's petition to intervene. Minn-Kota argues it has standing to appeal the PSC's decision because it participated in the proceedings before the PSC, and the PSC's decision should be reversed because it is not supported by the facts or law. In the alternative, Minn-Kota argues the case should be remanded to the PSC and it should be allowed to intervene and introduce additional evidence into the record. We affirm in part and reverse in part.

I

[¶2]  In 2017, Minn-Kota began construction of a large, $20 million grain handling facility near the municipalities of Barney and Mooreton, North Dakota. Given its size, the facility needed to be equipped with three-phase electric service to meet its demand requirements. During construction of the facility, Minn-Kota received proposals to provide electric power to the facility from Otter Tail Power Co., an electric public utility, and Dakota Valley Electric Cooperative, a rural electric cooperative. Otter Tail proposed building a distribution substation at the Minn-Kota facility and extending 1,000 feet of underground cable from an existing above-ground transmission line to feed the proposed substation. Dakota Valley proposed improving its existing three-phase infrastructure and extending approximately 4,000 feet of underground cable from the improved, existing infrastructure to the Minn-Kota facility. Minn-Kota determined Otter Tail would provide cheaper and more reliable electric service and chose Otter Tail as its preferred provider.

[¶3]  In February 2017, Otter Tail submitted an "Application for Permanent Authority" with the PSC seeking a certificate of public convenience and necessity under N.D.C.C. § 49-03-01 and § 49-03-01.1 as required by an act

1

known as the Territorial Integrity Act codified at N.D.C.C. §§ 49-03-01 to -01.5. Along with Otter Tail's application, Minn-Kota voluntarily submitted an "Appearance by Customer" expressing its desire for Otter Tail to provide electric power to the facility. However, Minn-Kota did not formally intervene in the proceedings. Rather, it relied on Otter Tail to represent its interests. The PSC issued notice of opportunity for a hearing and served the notice on Dakota Valley, the rural electric cooperative providing service in the area. Dakota Valley protested Otter Tail's application and requested a hearing. At the request of the PSC, an administrative law judge was appointed to preside as a procedural hearing officer.

[¶4] Because of Dakota Valley's protest, the PSC issued a notice of hearing identifying ten issues to be considered:

1. From whom does the customer prefer electric service?
2. What electric suppliers are operating in the general area?
3. What electric supply lines exist within at least a two-mile radius of the location to be served, and when were they constructed?
4. What customers are served by electric suppliers within at least a two-mile radius of the location to be served?
5. What are the differences, if any, between the electric suppliers available to serve the area with respect to reliability of service?
6. Which of the available electric suppliers will be able to serve the location in question more economically and still earn an adequate return on its investment?
7. Which supplier's extended electric service would best serve orderly and economic development of electric service in the general area?
8. Would approval of the applications result in wasteful duplication of investment or service?
9. Is it probable that the location in question will be included within the corporate limits of a municipality within the foreseeable future?
10. Will service by either of the electric supplier in the area unreasonably interfere with the service or system of the other?

[¶5]   A hearing on Otter Tail's application was held in October 2017. Otter Tail and Dakota Valley were represented at the hearing, and each offered evidence and testimony. Testimony was received from representatives and employees of Otter Tail and Dakota Valley and from George Schuler IV, a member of the board of directors and a minority owner of Minn-Kota. Minn-Kota was not a formal party represented at the hearing and, other than the testimony offered by Schuler, Minn-Kota did not contribute to the hearing.

[¶6]   In December 2017, the PSC held a work session to contemplate and discuss Otter Tail's application. At the work session, the PSC expressed concern that Otter Tail's proposal would result in wasteful duplication of investment and would not best serve orderly and economic development of electric service in the area. The concerns expressed by the PSC at the work session made it clear the PSC was likely going to deny Otter Tail's application.

[¶7]   As a result, Minn-Kota submitted a petition to intervene on February 1, 2018, because it "had a unique perspective on [the] issues before the [PSC], and because Minn-Kota no longer felt that its interest in the issuance of the certificate was sufficiently aligned with or adequately represented by Otter Tail's appearance before the [PSC] . . . ." Minn-Kota sought intervention so that it could introduce additional evidence and address the concerns expressed by the PSC during the work session. The ALJ denied Minn-Kota's petition. The ALJ determined Minn-Kota submitted its petition after the deadline to intervene had passed and Minn-Kota had not shown good cause as to why it should be allowed to intervene late. Minn-Kota requested the ALJ reconsider his decision, and the ALJ again denied Minn-Kota's request.

[¶8]   In March 2018, the PSC issued its findings of fact, conclusions of law and order. The PSC denied Otter Tail's application finding that although Minn-Kota preferred Otter Tail and Otter Tail would be able to provide more affordable service, both Otter Tail and Dakota Valley would provide reliable service to the facility, extension of service by Dakota Valley would best serve orderly and economic development of electric service in the general area, and extension of service by Otter Tail would result in a wasteful duplication of

service and investment. Minn-Kota appealed to district court, challenging the PSC's decision and the ALJ's order denying Minn-Kota's petition to intervene.

[¶9]   The district court affirmed the ALJ's order denying Minn-Kota's petition and dismissing Minn-Kota's appeal of the PSC's decision for lack of standing. The district court agreed with the ALJ's order and concluded Minn-Kota had not shown good cause "for the delay in filing its Petition to Intervene." Additionally, the district court concluded the "Appearance by Customer" submitted by Minn-Kota and Schuler's testimony at the hearing was "more akin to participation as a witness" and, therefore, Minn-Kota had not adequately participated in the proceedings for them to have standing. The district court did not review the merits of the PSC's decision, but it did state the decision appeared to be a "process of rational application of the facts to the law and that decision would have been affirmed."

## II

[¶10] Standing is a question of law, which is reviewed de novo on appeal. *Dakota Res. Council v. Stark Cty. Bd. of Cty. Comm'rs*, 2012 ND 114, ¶ 5, 817 N.W.2d 373; *see also Johnson v. Taliaferro*, 2011 ND 34, ¶ 9, 793 N.W.2d 804 (stating interpretation of statute is a question of law). We have explained the over-arching concept of standing for justiciability:

> The question of standing focuses upon whether the litigant is entitled to have the court decide the merits of the dispute. It is founded in concern about the proper—and properly limited—role of the courts in a democratic society. Without the limitation of the standing requirements, the courts would be called upon to decide purely abstract questions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf. The inquiry is two-fold. First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. Secondly, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; the plaintiff generally must assert his own legal rights and interests, and

4

cannot rest his claim to relief on the legal rights and interests of third parties.

*Shark v. U.S. W. Commc'ns, Inc.*, 545 N.W.2d 194, 198 (N.D. 1996) (quoting other cases).

[¶11] An administrative agency "challenging the standing of those seeking a review of its decision. . . . is a deliberate effort to prevent a judicial review of the agency's decision," which we do not look favorably upon. *Citizens State Bank of Neche v. Bank of Hamilton*, 238 N.W.2d 655, 658 (N.D. 1976); *Reliance Ins. Co. v. Pub. Serv. Comm'n*, 250 N.W.2d 918, 924 (N.D. 1977). We have said a narrow or limited construction should not be placed on who may be a party for purposes of appeal or review:

> The question of who is a proper party should not be resolved on strict technical grounds which could result in the public being denied the opportunity to question the actions of the governing agency, body or board, as the situation may be. Any doubt on the question of standing involving a decision by an administrative body should be resolved in favor of permitting the exercise of the right of appeal by any person aggrieved in fact.
>
> Generally, parties to an action or proceedings are set out in the title of the action or proceedings. However, in matters before administrative agencies it is common to entitle the proceedings "IN THE MATTER OF ___." Such entitlement does not serve as an aid in determining who is a party, except for the applicant, on which there is no question. The question of who are parties to the proceedings must be determined from the record rather than from the entitlement of the proceedings. The information as disclosed by the record constitutes the basis upon which a determination can be made as to who are parties to the proceedings.

*In re Bank of Rhame*, 231 N.W.2d 801, 808 (N.D. 1975) (footnote omitted). However, the right to appeal does not extend to merely nominal parties who are not aggrieved. *Shark*, 545 N.W.2d at 197.

[¶12] Under N.D.C.C. § 28-32-42, any *party* to a proceeding has standing to appeal an agency's decision. A party is defined as "each person named or

admitted as a party or properly seeking and entitled as of right to be admitted as a party." N.D.C.C. § 28-32-01(9).

[¶13] Prior to the enactment of the statutory definition of a "party," this Court set forth a three-part test to determine who may be considered a party to a proceeding for standing purposes. *Bank of Rhame*, 231 N.W.2d at 807-08. In *Bank of Rhame* we stated, "any person who is directly interested in the proceedings before an administrative agency who may be factually aggrieved by the decision of the agency, and who participates in the proceeding before such agency" is a party and has standing to appeal from the decision of the agency. *Id.* at 808. In *Shark v. U.S. West Communications, Inc.*, we held the enactment of N.D.C.C. § 28-32-01(9) did not overrule the standing doctrine of *Bank of Rhame*, and the definition of a "party" in § 28-32-01(9) does not change who may be considered a party for standing purposes. 545 N.W.2d at 197, 197 n.1. Likewise, this Court has continued to employ the three-part test set forth in *Bank of Rhame. See, e.g., In re Juran & Moody, Inc.*, 2000 ND 136, ¶¶ 16-17, 613 N.W.2d 503.

[¶14] Applying the above stated principles and the *Bank of Rhame* three-part test, we conclude Minn-Kota has standing to appeal the PSC's decision.

A

[¶15] By having a preference for Otter Tail as its preferred electric service provider, Minn-Kota was directly interested in the proceedings before the PSC.

B

[¶16] Minn-Kota was factually aggrieved by the PSC's decision. To be factually aggrieved, a party must be injured in some manner. *Washburn Pub. Sch. Dist. No. 4 v. State Bd. of Pub. Sch. Educ.*, 338 N.W.2d 664, 667 (N.D. 1983) (citing *Bernhardt v. Rummel*, 319 N.W.2d 159, 160 (N.D. 1982)). That is, a decision must enlarge or diminish a party's interest. *Id.* (citing *Bank of Neche*, 238 N.W.2d 655 (N.D. 1976)). But the potential to be factually aggrieved is not enough; a party must be aggrieved in fact. *Id.* In other words, a party must gain or lose something to be aggrieved. *Id.* Additionally, a mere dissatisfaction

6

or displeasure with a decision is not enough to appeal from such decision. *Id.* (citing *Huber v. Miller*, 101 N.W.2d 136, 140 (N.D. 1960)).

[¶17] The district court determined Minn-Kota was factually aggrieved by the PSC's decision, and the PSC itself concedes Minn-Kota was aggrieved. Dakota Valley argues Minn-Kota was not aggrieved by the PSC's decision because the PSC found both Dakota Valley and Otter Tail would provide reliable service and because there is not enough evidence in the record to conclude that Otter Tail would provide more affordable service to Minn-Kota. Dakota Valley's argument is misplaced. Dakota Valley essentially argues that, on the one hand, the PSC correctly found Dakota Valley would provide reliable service to Minn-Kota, but on the other hand, the PSC incorrectly found Otter Tail would provide more affordable service. We are asked to conclude Minn-Kota was not factually aggrieved by agreeing with the PSC in one instance yet disagreeing with it in another. Dakota Valley cannot have it both ways.

[¶18] Minn-Kota was aggrieved by the PSC's decision because Otter Tail, Minn-Kota's preferred electric service provider, was denied a certificate of public convenience and necessity. Additionally, Minn-Kota was aggrieved by the PSC's finding that Otter Tail would provide more affordable services to Minn-Kota, yet still denying Otter Tail's application. In essence, once the PSC denied Otter Tail's application, Minn-Kota lost the ability to have its facility serviced with more affordable electric service by its preferred service provider. This rendered Minn-Kota factually aggrieved.

[¶19] However, the fact that Minn-Kota was aggrieved by the PSC's decision does not in itself make the PSC's decision erroneous. An administrative agency may make a rational decision in which one of the parties bound by that decision is aggrieved. The PSC made its determination based on *public* convenience and necessity, not just that of Minn-Kota. In doing so, the PSC weighed ten factors. Two of the factors considered by the PSC factually aggrieved Minn-Kota. Nonetheless, the PSC determined all the factors, taken together as a whole, weighed against granting Otter Tail a certificate of public convenience and necessity. Minn-Kota need not be aggrieved by all ten factors or the PSC's decision as a whole to be factually aggrieved for purposes of standing. It is

7

immaterial how slight or substantial the aggrievance is for a party to be aggrieved. Minn-Kota was factually aggrieved by the PSC's decision.

C

[¶20] Both Dakota Valley and the PSC argue, and the district court determined, the "Appearance by Customer" submitted by Minn-Kota and the testimony offered at the hearing by Schuler, a Minn-Kota representative, was inadequate participation in the proceedings to be considered a party. Additionally, Dakota Valley and the PSC argue Minn-Kota cannot be considered a party because it was not represented by legal counsel during the administrative proceedings. We conclude Minn-Kota adequately participated in the proceedings.

[¶21] This Court has never explicitly stated in what manner or to what extent a person must participate to satisfy the participation element of the *Bank of Rhame* standing test. But a review of our cases indicates that so long as the party appealing has a significant or unique stake in the outcome, minimal participation is sufficient to have adequately participated. A party need not have been named as a party or have actively engaged in the proceedings to have participated. *See Moody*, 2000 ND 136, ¶ 18, 613 N.W.2d 503 (holding North Dakota Securities Commissioner participated when he was treated as a party throughout the proceedings); *Shark*, 545 N.W.2d at 198-99 (holding telephone company customer did not participate by sending an informal pre-hearing letter to a single PSC commissioner in which he stated no position on the matter); *Washburn Pub. Sch. Dist. No. 4*, 338 N.W.2d at 667 (holding school district participated in proceedings when president of school board was present at the hearing where petitioners presented their arguments); *O'Connor v. N. States Power Co.*, 308 N.W.2d 365, 371 (N.D. 1981) (holding rate payers did not have standing when they were not involved with proceedings before the PSC); *Bank of Neche*, 238 N.W.2d at 659 (holding competing bank had standing to appeal granting of application even though it did not participate in proceedings relating to application); *Bank of Rhame*, 231 N.W.2d at 804 (holding competitor bank had standing when it appeared through counsel at application hearing); *see also Eckre v. Pub. Serv. Comm'n*, 247 N.W.2d 656, 662 (N.D. 1976) (holding

8

landowners who had not participated in proceedings had standing to challenge PSC decision by writ of mandamus).

[¶22] The "Appearance by Customer" was voluntarily submitted by Minn-Kota. The document clearly advocated for Minn-Kota's position on the matter by asking that the PSC grant Otter Tail's application and issue a certificate of public convenience and necessity. Voluntarily submitting such a document into the record is an action regularly taken by a party to an adversarial proceeding and is not one taken by a person who does not wish to, in at least some manner, participate in the proceedings.

[¶23] Schuler's testimony was not similar to that offered by a typical witness. Schuler was not subpoenaed and was under no obligation to testify. When asked why he voluntarily chose to testify, Schuler stated, "I heard about the situation and, I mean, we saw the figures and, you know, it—I felt it was necessary to come out here and have you guys hear me and what my thoughts were." Moreover, Schuler's testimony was not limited to the technical figures or plan of the project. Schuler clearly advocated for a certain result—that Otter Tail's application be granted.

[¶24] Besides formally intervening and calling its own witnesses and submitting its own evidence, Minn-Kota could have done little, if anything, to have more actively participated in the proceedings. It was not unreasonable for Minn-Kota to rely on Otter Tail to prudently present evidence supporting Minn-Kota's position to the PSC so that the PSC could make an informed decision.

[¶25] Minn-Kota's unique personal stake in the outcome of the proceedings also gives Minn-Kota standing to appeal. If Minn-Kota did not have standing, it would be subjected to Otter Tail's willingness to appeal or not appeal the PSC's decision. Minn-Kota would also be forced to rely on Otter Tail to competently litigate the matter. Minn-Kota, not Otter Tail, is in a better position to appeal given it is the sole customer to whom electric service would be provided. *See In re Otter Tail Power Co.*, 451 N.W.2d 95, 97 (N.D. 1990). Denying Minn-Kota the ability to appeal would effectively leave Minn-Kota

without a remedy. Such a result would be unjustifiable provided Minn-Kota is the sole reason for Otter Tail's application in the first place.

[¶26] Moreover, the PSC's and Dakota Valley's argument that Minn-Kota must participate through legal counsel is without merit. The PSC cites *Wetzel v. Schlenvogt*, 2005 ND 190, ¶¶ 11-13, 705 N.W.2d 836, and *Blume Constr., Inc. v. State ex rel. Job Serv. N.D.*, 2015 ND 285, ¶ 21, 872 N.W.2d 312, in support of this argument. *Wetzel* and *Blume* relate to court proceedings and who is authorized to practice law under N.D.C.C. § 27-11-01. Section 27-11-01 provides who is eligible to practice law "in any court of record of this state." Minn-Kota and its representative appeared in an administrative proceeding, not a court of record. *Wetzel* and *Blume*, and the underlying statute in which they are premised on, relate to an entirely different subject matter and in no way relate to or are persuasive in this case. Rather, the PSC cites the correct authority for determining who may appear on behalf of a corporation in any proceeding before the PSC—N.D.A.C. § 69-02-01-05. Under § 69-02-01-05, "an officer or authorized employee of a corporation" may appear. Adopting the PSC's and Dakota Valley's argument—that a corporation must participate in the proceedings through an attorney to obtain standing—would lead to an absurd result. Minn-Kota did not need to be represented by legal counsel in the administrative proceedings for standing purposes.

[¶27] Minn-Kota is not merely a nominal party and is aggrieved by the PSC's decision. Any doubt on whether Minn-Kota has standing should be resolved in favor of Minn-Kota. Barring Minn-Kota's appeal on standing grounds would place a narrow or limited construction on who may be a party for purposes of appeal or review, which we have long held goes against basic principles of standing. Minn-Kota satisfied all three elements of the *Bank of Rhame* test and has standing to appeal the PSC's decision. We reverse the district court's determination that Minn-Kota lacks standing.

III

[¶28] We have explained our standard for reviewing a decision by the PSC granting or denying a certificate of public convenience and necessity:

An appeal from a Commission decision is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Capital Elec. Coop., Inc. v. City of Bismarck*, 2007 ND 128, ¶ 30, 736 N.W.2d 788. As relevant to this appeal, a district court must affirm a Commission order under N.D.C.C. § 28-32-46, unless:

1. The order is not in accordance with the law.

. . . .

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

In an appeal to this Court from a district court's decision on an appeal from a Commission decision, we review the Commission's order in the same manner as the district court. *See* N.D.C.C. § 28-32-49. The Commission's decision on questions of law is fully reviewable. *Capital Elec. Coop.*, 2007 ND 128, ¶ 31, 736 N.W.2d 788. In reviewing the Commission's findings of fact, however, we do not substitute our judgment for that of the Commission or make independent findings. *Id. See Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979) ["In construing the 'preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency."]. Rather, in reviewing the Commission's findings of fact, "'[w]e determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.'" *Capital Elec. Coop.*, at ¶ 31 (quoting *Power Fuels*, at 220).

*Capital Elec. Coop., Inc. v. N.D. Pub. Serv. Comm'n*, 2016 ND 73, ¶ 6, 877 N.W.2d 304 (quoting *N. Cent. Elec. Coop., Inc. v. N.D. Pub. Serv. Comm'n*, 2013 ND 158, ¶¶ 6-7, 837 N.W.2d 138). Additionally, "[a]gency expertise is entitled

to appreciable deference if the subject matter is highly technical." *Cass Cty. Elec. Coop., Inc. v. N. States Power Co.*, 518 N.W.2d 216, 220 (N.D. 1994) (citing *True v. Heitkamp*, 470 N.W.2d 582 (N.D. 1991)).

[¶29] Minn-Kota argues the PSC's findings that Dakota Valley would provide reliable electric service, Dakota Valley serves more customers within at least a two-mile radius, and Otter Tail's proposal would be a wasteful duplication of services are not supported by the evidence.

A

[¶30] The PSC found:

> Otter Tail's proposal to serve Minn-Kota's large motor load on a dedicated circuit from a dedicated substation it will have to construct may offer a higher level of reliability. However, the Commission finds that both Otter Tail and Dakota Valley would provide reliable service to Minn-Kota.

The record supports the PSC's finding that Otter Tail's proposal of building a substation adjacent to the Minn-Kota facility would be more reliable than Dakota Valley's proposal. This is because the substation would be on the facility's premises and it would only serve the Minn-Kota facility. Therefore, repair service would be quicker and easier if an electricity outage were to occur.

[¶31] However, the record also indicates Dakota Valley can reliably provide electricity to the facility through its existing systems and infrastructure. Dakota Valley's ability to provide reliable electric service is not negated by the PSC's finding that Otter Tail's proposal may be more reliable. Considering the differences in reliability between two potential providers does not require the PSC grant a certificate of public convenience to an applicant who would provide more reliable service when there is ample evidence that the party opposing the application can also provide reliable service. These are precisely the circumstances here. The PSC's finding that both Otter Tail and Dakota Valley can provide reliable service is supported by a preponderance of the evidence in the record.

12

[¶32] The PSC found Otter Tail served two customers within a two-mile radius of the Minn-Kota site, while Dakota Valley served approximately eighteen customers within a two-mile radius. Minn-Kota argues the two-mile radius was an arbitrary cutoff, and the PSC should have taken into consideration the number of customers served by Otter Tail in the larger region. A review of the record does show that Otter Tail serves more customers within a four-mile radius of the facility, but this is because a four-mile radius would include the municipalities of Barney and Mooreton, which are both within Otter Tail's service territory.

[¶33] In *Capital Electric Cooperative, Inc. v. North Dakota Public Service Commission*, we stated, "the number of customers served by electric suppliers in the larger vicinity should be considered for assessing capacity requirements in determining the orderly development of electrical service." 2016 ND 73, ¶ 12, 877 N.W.2d 304. However, in *Capital Electric* we did not consider the number of customers beyond a two-mile radius. *See id.* at ¶ 11. Rather, we emphasized the number of customers in the larger area should be examined to ensure there is no wasteful duplication of services. *See id.* at ¶ 12. Construction of additional infrastructure by one party to service a single customer when the opposing party has existing infrastructure in place that services multiple existing customers, and that can be easily modified or upgraded to provide service, can be a wasteful duplication of services. *See id.* at ¶ 15.

[¶34] The record shows Dakota Valley serves more rural customers in the vicinity of the Minn-Kota facility, and Otter Tail serves more customers in the municipalities of Barney and Mooreton. For Otter Tail to extend electricity to the rural area where the Minn-Kota facility is located, it would have to construct substantial additional infrastructure. Dakota Valley already has similar infrastructure in place that can be easily modified to satisfy Minn-Kota's needs. The PSC's finding that Dakota Valley serves more customers within a two-mile radius is supported by a preponderance of the evidence in the record. Refusing to consider the number of customers beyond a two-mile

radius is not erroneous provided with the fact that such a consideration would support a wasteful duplication of services.

C

[¶35] With regard to wasteful duplication of services, the PSC found:

> 43.    Service by Otter Tail to the Minn-Kota facility would require construction of a new substation while the existing Mooreton substation is fully capable of serving the facility.
>
> 44.    Dakota Valley, and Central Power Electric Cooperative, have made investments in the Mooreton substation and associated distribution facilities to serve the general area. Approval of Otter Tail's application to serve the Minn-Kota facility would result in wasteful duplication of service and investment.

[¶36] Any duplication is not necessarily wasteful duplication. *See N. States Power Co. v. N.D. Pub. Serv. Comm'n*, 452 N.W.2d 340, 344 (N.D. 1990). Whether construction of a facility is duplicative or wasteful is one of fact for the PSC to decide. *Id.* at 345. This Court has upheld a PSC's finding that construction of a new facility would be wasteful when a rural electric cooperative "had an extensive system in place for the annexed territory, and . . . extension of electric service into [this territory by an electric public utility] would constitute an unreasonable duplication of the facilities and services provided by [the cooperative] in the area." *Id.* at 344.

[¶37] Dakota Valley has recently made investments in its infrastructure that will service the Minn-Kota facility. Otter Tail's construction of a new substation and extension of service would be duplicative of the facilities and services invested in and provided by Dakota Valley in the area. The PSC's finding that Otter Tail's proposal would lead to a wasteful duplication of investment or service is supported by a preponderance of the evidence in the record. This finding is further supported by the PSC's findings that Dakota Valley serves more customers within a two-mile radius, and Dakota Valley would best serve orderly and economic development of electric service in the general area.

14

[¶38] Under our deferential standard of review of agency decisions, we conclude a reasoning mind could have determined the factual conclusions reached by the PSC were supported by the weight of the evidence from the entire record. We do not reweigh or reevaluate the evidence that was presented at the PSC hearing, and we do not function as a super board and second guess the PSC's findings. We conclude the PSC's decision is supported by a preponderance of the evidence, and we affirm the PSC's Findings of Fact, Conclusions of Law and Order.

IV

[¶39] In the alternative, Minn-Kota argues it should be allowed to intervene and submit new evidence into the record for the PSC's consideration. We review an ALJ's decision under the same standard of review as we review an agency's decision. *In re Juran and Moody, Inc.*, 2000 ND 136, ¶ 22, 613 N.W.2d 503. We give deference to an ALJ's findings of fact and review an ALJ's legal conclusions under a de novo standard of review. *Id.* at ¶¶ 23-24. We apply a similar standard when reviewing whether a party may intervene under N.D.R.Civ.P. 24(a). *See Eichhorn v. Waldo Twp. Bd. of Supervisors*, 2006 ND 214, ¶ 13, 723 N.W.2d 112 (applying a clearly erroneous standard for findings of fact and a de novo standard for the ultimate question of whether a party has a right to intervene).

[¶40] Under N.D.C.C. § 28-32-28:

> An administrative agency may grant intervention in an adjudicative proceeding to promote the interests of justice if intervention will not impair the orderly and prompt conduct of the proceeding and if the petitioning intervenor demonstrates that the petitioner's legal rights, duties, privileges, immunities, or other legal interests may be substantially affected by the proceeding or that the petitioner qualifies as an intervenor under any provision of statute or rule. . . . An administrative agency may adopt rules relating to intervention in an adjudicative proceeding.

Under § 28-32-28, the PSC adopted the following rule for intervention in a proceeding before the agency:

Any person with a substantial interest in a proceeding may petition to intervene . . . . An intervention may be granted if the petitioner has a statutory right to be a party to the proceeding; or the petitioner has a legal interest which may be substantially affected by the proceeding, and the intervention would not unduly broaden the issues or delay the proceeding.

. . . .

*A petition to intervene in any proceeding must be filed at least ten days prior to the hearing, but not after except for good cause shown.*

N.D.A.C. § 69-02-02-05 (emphasis added).

[¶41] In civil legal proceedings, N.D.R.Civ.P. 24 allows for intervention "on timely motion." Intervention has historically been liberally granted in North Dakota. *Eichhorn*, 2006 ND 214, ¶ 13, 723 N.W.2d 112. Even though liberally granted, post-judgment intervention is "'unusual and not often granted.'" *Brigham Oil & Gas, L.P. v. Lario Oil & Gas Co.*, 2011 ND 154, ¶ 40, 801 N.W.2d 677 (quoting *Quick v. Fischer*, 417 N.W.2d 843, 845 (N.D. 1988)). Certain considerations must be taken into account in deciding whether to grant a post-judgment motion for intervention:

> The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case. If prejudice is found, the motion will be denied as untimely. Conversely, the absence of prejudice supports finding the motion to be timely . . . . Delay is not the only possible form of prejudice to the existing parties, but if the intervention will not delay the termination of the litigation intervention ordinarily will be allowed.

*Brigham Oil & Gas*, at ¶ 40.

[¶42] Unlike N.D.R.Civ.P. 24, N.D.A.C. § 69-02-02-05 provides an explicit time frame for seeking to intervene—*at least 10 days prior to the hearing*. However, if a potential intervenor shows good cause, intervention may be allowed after the 10 day deadline. We note here that a showing of good cause under N.D.A.C.

§ 69-02-02-05(2) should not be interpreted to mean a showing of good cause for the delay in petitioning to intervene. Rather, "good cause" should be interpreted to mean a showing of good cause as to why a petitioning intervenor should be allowed to intervene late under the circumstances.

[¶43] We have never stated what constitutes "good cause" under N.D.A.C. § 69-02-02-05. But our cases on post-judgment intervention under N.D.R.Civ.P. 24 are analogous and provide guidance on what may constitute "good cause."

[¶44] This Court has granted post-judgment intervention to protect legal and property interests. *See, e.g.*, *Quick*, 417 N.W.2d at 845. On the other hand, we have denied intervention sought months after judgment was entered when the petitioning party had notice of the proceedings, was present at court hearings, gave no explanation for the delay in seeking intervention, and was attempting to relitigate issues resolved in the main action rather than raising important policy issues. *Brigham Oil & Gas*, 2011 ND 154, ¶ 42, 801 N.W.2d 677. Under such circumstances, allowing intervention would have interfered with the orderly processes of the court, would have required withdrawal of the appeal, relitigation of the issues, and caused other expensive delays to the existing parties. *Id.*

[¶45] Minn-Kota filed its petition to intervene on February 1, 2018—over 100 days after the October, 2017, hearing on Otter Tail's application. Minn-Kota did not give a reason for the delay, other than Minn-Kota felt it "had a unique perspective on these and other issues before the Commission, and because Minn-Kota no longer felt that its interest in the issuance of the certificate was sufficiently aligned with or adequately represented by Otter Tail's appearance before the Commission . . . ." Minn-Kota argued it had shown good cause because it had a "substantial interest" in the outcome of the proceedings and because it would be "substantially affected" by the PSC's decision. The ALJ denied Minn-Kota's petition to intervene finding Minn-Kota's and Otter Tail's interests were sufficiently aligned, Minn-Kota and Otter Tail had made many of the same arguments throughout the proceedings, Minn-Kota's interests had been adequately represented by Otter Tail and by Minn-Kota's representative who testified at the October hearing, and the issues had been substantially and

thoroughly laid out for the PSC to make a reasoned and intelligent decision. Moreover, the ALJ concluded Minn-Kota did not show good cause as to why it should be allowed to intervene.

[¶46] Even though intervention is liberally granted, we agree with the ALJ's findings and conclusion that Minn-Kota did not show good cause as to why it should be allowed to intervene late. It is certainly true that Minn-Kota's interests are "substantially affected" by the PSC's decision. But Minn-Kota has not provided a compelling argument on how Otter Tail did not adequately represent its interests at the October hearing or throughout the entirety of the proceedings. Minn-Kota's readily apparent purpose for seeking to intervene was to offer additional information to address concerns expressed by the PSC during the December 20, 2017, work session. Otter Tail presented sufficient information at the October hearing for the PSC to make an intelligent and informed decision. Any additional information offered by Minn-Kota after the December 20 work session would have been tailored to the PSC's concerns. Allowing a party to present evidence after it has been provided with insight on how an agency is likely to decide would circumvent the administrative process and the adversarial system in place for such matters. Both Dakota Valley and the PSC would have incurred additional time and expense in rebutting and considering additional evidence presented by Minn-Kota if it had been allowed to intervene. This after all parties involved in the matter had already invested significant time and expense throughout the proceedings.

[¶47] Contrary to its argument, Minn-Kota would not have been the only party prejudiced from a delay if it had been allowed to intervene; every party to the action would have been impacted and prejudiced by the additional time and expense incurred. Minn-Kota has not shown good cause or that allowing it to intervene late would promote the interests of justice. We affirm the ALJ's denial of Minn-Kota's petition to intervene and the district court's order.

18

V

[¶48] The district court's order is affirmed in part and reversed in part, and thus the order of the PSC is affirmed.

[¶49] Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Jon J. Jensen, C.J.