FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
APRIL 28, 2022
1STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 85

Energy Transfer LP and Dakota
Access LLC,                                            Plaintiffs and Appellants

v.

North Dakota Private Investigative
and Security Board,                                    Defendant and Appellee

and

Tigerswan, LLC,                                                          Defendant

## No. 20210244

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Jennifer S. Recine (argued), New York, N.Y., and Randall J. Bakke (on brief) and Shawn A. Grinolds (appeared), Bismarck, N.D., for plaintiffs and appellants.

Courtney R. Titus, Assistant Attorney General, Bismarck, N.D., for defendant and appellee.

Jack McDonald and Timothy Q. Purdon, Bismarck, N.D., for amici curiae North Dakota Newspaper Association, HPR, LLC, and First Look Institute, Inc.

**Tufte, Justice.**

[¶1] Energy Transfer LP and Dakota Access LLC (together "Energy Transfer") appeal from a district court's order and judgment affirming the North Dakota Private Investigative and Security Board's ("Board") order denying Energy Transfer's petition to intervene in an administrative action against TigerSwan, LLC. Energy Transfer argues that the district court erred by concluding it lacked standing to appeal the Board's decision denying its petition to intervene and that the Board erred in denying its petition to intervene. We reverse the court order concluding Energy Transfer lacked standing to appeal the Board's order, and we reverse the Board's order denying intervention and remand to the Board for further proceedings.

I

[¶2] TigerSwan contracted with Energy Transfer to provide services related to construction of the Dakota Access Pipeline. The Board commenced administrative proceedings against TigerSwan, alleging it provided investigative and security services in North Dakota without a license. In June of 2020, the Board compelled TigerSwan to produce approximately 16,000 documents in response to a discovery request. Upon learning of the document disclosure, Energy Transfer contacted the Board, asserting the documents are privileged and confidential, or are otherwise irrelevant to the administrative action.

[¶3] On September 15, 2020, while Energy Transfer was attempting to resolve its claims to the documents, the Board executed a settlement agreement with TigerSwan. Energy Transfer filed a petition to intervene on September 29, seeking to compel return of the documents and to obtain a protective order. Because the documents at issue were produced in electronic form and cannot be returned in the same sense as a physical copy, we consider the request to "return" the documents as a request to compel destruction of all copies in the Board's possession. The Administrative Law Judge ("ALJ") sent

the petition to the Board, indicating a notice of settlement and stating she would take no further action unless requested. On October 12, the Board held a virtual meeting to consider Energy Transfer's petition. At this meeting the Board denied Energy Transfer's petition and closed the administrative action. The Board issued a written order denying the petition on October 30, holding that intervention was not proper because it would "impair the orderly conduct of the proceedings" because "a settlement had already been reached and the case was effectively closed." The Board also found that even if it would have allowed intervention, it could not address or consider the relief sought by Energy Transfer because the documents are subject to open records laws. Energy Transfer appealed the Board's order to the district court.

[¶4] The district court dismissed the appeal, concluding Energy Transfer lacked standing to appeal the Board's order because it was not a party under the Administrative Agencies Practice Act ("AAPA"). The court concluded in the alternative that the Board's decision was in accordance with the law because Energy Transfer intervened too late and the Board could not lawfully address the relief sought in the petition given the existence of the open records and record retention laws. Energy Transfer appealed the court's order and judgment to this Court.

[¶5] Energy Transfer commenced a separate action against the Board and TigerSwan after its unsuccessful attempt to intervene in the administrative proceeding. Energy Transfer brought claims for conversion, claim and delivery, and breach of contract and also sought an injunction to require the Board and TigerSwan to keep the disputed documents confidential and not to be produced to any third party. The court dismissed Energy Transfer's claims for conversion, claim and delivery, and breach of contract and denied Energy Transfer's request for an injunction, holding the produced documents constitute records for purposes of the N.D.C.C. ch. 44-04 open records laws and the N.D.C.C. ch. 54-46 document retention laws. That action is the subject of the appeal in *Energy Transfer LP v. North Dakota Private Investigative & Security Board* (Docket No. 20220036; Dist. Ct. Case No. 08-2020-CV-02788).

## II

[¶6] Energy Transfer argues the district court erred in dismissing its appeal for lack of standing. "Standing is a question of law, which is reviewed de novo on appeal." *Minn-Kota Ag Prods., Inc. v. N.D. Pub. Serv. Comm'n*, 2020 ND 12, ¶ 10, 938 N.W.2d 118.

[¶7] Under N.D.C.C. § 28-32-42, any party to an administrative proceeding has standing to appeal the agency's decision. A party is defined as "each person named or admitted as a party or properly seeking and entitled as of right to be admitted as a party." N.D.C.C. § 28-32-01(9).

[¶8] The parties articulate different standards a court should use in determining whether a party has standing to appeal an order denying intervention in the administrative context. The Board argues the court applied the proper three-part test established in *Bank of Rhame*, 231 N.W.2d 801, 807-08 (N.D. 1975), in determining Energy Transfer was not a "party" to the proceeding who had standing to appeal the Board's order. In *Bank of Rhame* we stated, "'any person who is directly interested in the proceedings before an administrative agency who may be factually aggrieved by the decision of the agency, and who participates in the proceeding before such agency' is a party and has standing to appeal from the decision of the agency." *Minn-Kota Ag Prods., Inc.*, 2020 ND 12, ¶ 13 (quoting *Bank of Rhame*, 231 N.W.2d at 808). Using these three factors, the court determined Energy Transfer could not meet this test to establish it had standing to appeal the Board's order denying intervention. Energy Transfer, on the other hand, argues the court erred in applying the *Bank of Rhame* test because this test is only "appropriate to assess a movant's standing to appeal the *merits* of a substantive agency decision [and] it is not applicable to judicial review of an order denying a *petition to intervene*." Energy Transfer contends that our case law has not applied the *Bank of Rhame* test in evaluating standing to appeal an order denying a petition to intervene because "[t]o require that a would-be intervenor—who is not a "party"—be a "party" to have standing to appeal would deny persons denied intervention the right to appeal such order." Instead, Energy Transfer urges this Court to follow what it describes as the

3

"well-established rule across the country that persons denied intervention have standing to appeal that denial, *independent of whether they would have standing to appeal on the merits*."

[¶9] This Court has discussed standing in an appeal involving an order denying intervention in the administrative context on only one occasion. In *Minn-Kota*, the appellant appealed both the agency's decision and the ALJ's order denying its petition to intervene. 2020 ND 12, ¶ 1. We applied the *Bank of Rhame* test to determine whether the appellant had standing to appeal the merits of the Public Service Commission's decision. *Id.* at ¶¶ 11–14. Because we concluded Minn-Kota had standing to appeal the merits under the *Bank of Rhame* test, we did not discuss whether standing may be more easily satisfied when a failed intervenor appeals only an order denying intervention. *Id.* at ¶¶ 14, 39–47.

[¶10] A review of our case law demonstrates that the *Bank of Rhame* test is used only to assess a movant's standing to appeal the merits of an agency's decision, not from a denial of intervention. *See, e.g., In re Juran & Moody, Inc.*, 2000 ND 136, ¶¶ 17–20, 613 N.W.2d 503 (applying the *Bank of Rhame* test to analyze whether appellant had standing to appeal an ALJ's final order of dismissal determining no securities registration laws were violated); *Shark v. U.S. WEST Commc'ns, Inc.*, 545 N.W.2d 194, 196–200 (N.D. 1996) (applying the *Bank of Rhame* test to analyze whether appellant had standing to appeal a PSC decision approving the sale of the exchanges and transfers of certificates of public convenience and necessity); *Cass Cty. Elec. Co-op., Inc. v. Northern States Power Co.*, 518 N.W.2d 216, 219 (N.D. 1994) (applying the *Bank of Rhame* test to analyze whether appellant had standing to appeal a PSC decision finding the flexible tariffs to be valid); *Washburn Pub. Sch. Dist. No. 4 v. State Bd. of Pub. Sch. Educ.*, 338 N.W.2d 664, 666–68 (N.D. 1983) (applying the *Bank of Rhame* test to analyze whether appellant had standing to appeal the State Board of Public School Education's decision denying annexation). Likewise, when we review an appeal from persons denied intervention outside of the AAPA, we do not impose a standing requirement on the failed intervenor, but instead simply review the denial of intervention. *E.g., Manning v. Jaeger*, 2021 ND 162, 964 N.W.2d 522; *Public Serv. Comm'n v.*

4

*Grand Forks Bean Co., Inc.*, 2017 ND 201, 900 N.W.2d 255; *Brigham Oil & Gas, L.P. v. Lario Oil & Gas Co.*, 2011 ND 154, 801 N.W.2d 677; *Wyatt v. R.D. Werner Co., Inc.*, 524 N.W.2d 579 (N.D. 1994). Judicial review of an order denying intervention is "immediately appealable" because "[a]n order denying a non-party's motion to intervene effectively concludes the proceedings for intervention and prevents the movant from becoming a party to the original action". *Wyatt*, 524 N.W.2d at 580.

[¶11] Allowing immediate appellate review of an order denying intervention is the established rule across the nation. *See, e.g.*, *City of Cleveland v. Ohio*, 508 F.3d 827, 837 (6th Cir. 2007) (applying constitutional standing principles applicable to federal courts "recogniz[ing] the general rule prohibiting a party who unsuccessfully filed a motion to intervene from appealing anything but the order denying intervention"); *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998) (explaining that a failed intervenor "has no standing to appeal any order other than the denial of intervention"); *Hopper v. Estate of Goard*, 386 P.3d 1245, 1247 n.2 (Alaska 2017) ("Although we review the denial of their motion to intervene, we do not reach their other arguments because '[a] failed intervenor has standing to appeal only the denial of intervention' and not the merits of the adjudication."); *In Interest of EHD*, 2017 WY 134, ¶ 18, 405 P.3d 222 (recognizing "the right to appeal from the denial of a motion to intervene" as distinct from the "ability to challenge any other rulings").

[¶12] The district court erred in applying the *Bank of Rhame* test to Energy Transfer's appeal. Energy Transfer was not appealing the merits of the Board's decision regarding TigerSwan's inability to obtain a license to provide security and investigative services in North Dakota. Energy Transfer brought a narrower appeal limited to the Board's order denying its petition to intervene. A failed intervenor has standing to appeal an order denying intervention. Therefore, we conclude Energy Transfer had standing to appeal the Board's order denying its petition to intervene.

5

## III

[¶13] Because Energy Transfer had standing to appeal the Board's order denying intervention, we now address whether the Board erred in determining post-settlement intervention was improper and whether it lacked authority to address the relief sought in Energy Transfer's petition. "When a decision of an administrative agency is appealed from the district court to this Court, we review the decision of the agency." *Rennich v. N.D. Dep't of Human Servs.*, 2008 ND 171, ¶ 10, 756 N.W.2d 182. A reviewing court must affirm an agency order unless:

1.  The order is not in accordance with the law.
2.  The order is in violation of the constitutional rights of the appellant.
3.  The provisions of this chapter have not been complied with in the proceedings before the agency.
4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.
5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.
6.  The conclusions of law and order of the agency are not supported by its findings of fact.
7.  The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8.  The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. This Court will reverse an agency's findings only if they "are not supported by a preponderance of the evidence" and a reasoning mind could not have determined the factual conclusions based upon the evidence from the entire record. *Rennich,* 2008 ND 171, ¶ 11. Questions of law, however, "are fully reviewable on an appeal from an administrative decision." *Id.*

[¶14] Under N.D.C.C. § 28-32-28:

> An administrative agency may grant intervention in an adjudicative proceeding to promote the interests of justice if intervention will not impair the orderly and prompt conduct of the proceeding and if the petitioning intervenor demonstrates that the petitioner's legal rights, duties, privileges, immunities, or other legal interests may be substantially affected by the proceeding or that the petitioner qualifies as an intervenor under any provision of statute or rule. . . . An administrative agency may adopt rules relating to intervention in an adjudicative proceeding.

[¶15] The abuse of discretion standard of review used for permissive intervention under N.D.R.Civ.P. 24(b) is applicable to intervention in the AAPA context because N.D.C.C. § 28-32-28 also gives the agency discretion on whether to grant intervention. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *Grand Forks Bean Co., Inc.*, 2017 ND 201, ¶ 16.

[¶16] Our intervention precedents under N.D.R.Civ.P. 24 provide guidance in analyzing denied intervention in the AAPA context. *Minn-Kota*, 2020 ND 12, ¶¶ 41–44. "Intervention has historically been liberally granted in North Dakota." *Id.* at ¶ 41. Although liberally granted, "post-judgment intervention is 'unusual and not often granted.'" *Id.* (quoting *Quick v. Fischer*, 417 N.W.2d 843, 845 (N.D. 1988)). In deciding whether to grant a post-judgment petition for intervention, certain considerations must be taken into account, including:

> The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case. If prejudice is found, the motion will be denied as untimely. Conversely, the absence of prejudice supports finding the motion to be timely . . . . Delay is not the only possible form of prejudice to the existing parties, but if the intervention will not delay the

termination of the litigation intervention ordinarily will be allowed.

*Id*. Further, if allowing intervention after judgment will neither "(1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court[,] . . . the mere fact that judgment already has been entered should not by itself require a motion for intervention to be denied." *Brigham Oil & Gas,* 2011 ND 154, ¶ 40.

[¶17] Although unusual, this Court has granted post-judgment intervention to protect legal and property interests when an attempted intervenor moved for intervention "promptly after learning of the entry of judgment, within the time for appeal." *Quick*, 417 N.W.2d at 845. However, when attempted intervenors seek "to intervene months after learning of the court's decision" where "[n]o explanation has been given for the delay and intervention [would allow] relitigation of the issues, and other expensive delays at a cost to the existing parties and to the orderly processes of the court," post-judgment intervention is inappropriate. *Brigham Oil & Gas*, 2011 ND 154, ¶ 42.

[¶18] The Board abused its discretion in denying Energy Transfer's post-settlement petition to intervene. First, regarding prejudice to the existing parties, the Board found that keeping the administrative action open to resolve Energy Transfer's document concerns could "detrimentally affect the parties' settlement and conclusion of the case." However, Energy Transfer is not concerned with any of the issues resolved by the settlement between the parties, but instead is concerned with the entirely separate issue of disposition and management of documents. TigerSwan would have no involvement in this issue, and it would not incur any additional time and expense if the action remained open to resolve document management issues. Additionally, while this Court has yet to address post-judgment or post-settlement intervention for the sole purpose of managing documents, many jurisdictions that have addressed this issue have concluded that intervention would not prejudice the parties or impair the judgment. *See, e.g., Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1047 (D.C. Cir. 1998) ("We simply note that there is a 'growing consensus among the courts of appeals that

8

intervention to challenge confidentiality orders may take place long after a case has been terminated.'"); *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir. 1990) (allowing intervention three years after settlement of the case because intervention "was not on the merits [of the underlying case], but for the sole purpose of challenging a protective order"); *Zenith Elec. Corp. v. Ballinger*, 204 P.3d 1106, 1112 (Ariz. Ct. App. 2009) (because a non-party "sought to intervene for a limited purpose [of furthering the public's interest in access to materials produced during discovery] and not to disrupt or interfere with the settlement agreement . . . prejudice to [the parties] was unlikely"); *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 884 A.2d 981, 1016 (Conn. 2005) (because the "would-be intervenor" seeks to intervene for "an ancillary issue concerning the protective orders . . . we conclude that the delay in intervention caused little, if any, prejudice to the parties to the withdrawn cases"). Further, the potential prejudice from relitigation of issues discussed in *Brigham Oil & Gas* and *Minn-Kota* is absent in this case because the request to intervene relates only to document management and would not implicate the merits of the settlement. Additionally, unlike the appellants in *Brigham Oil & Gas* and *Minn-Kota*, Energy Transfer has explained its reason for delayed intervention—assurances from the Board's counsel that their privileged documents would be returned and that the Board would keep the action open to address Energy Transfer's document concerns. Therefore, there is no indication the parties would be prejudiced to justify the Board denying post-settlement intervention.

[¶19] Second, regarding substantial interference with the orderly processes of the agency, this factor also appears to be absent because Energy Transfer promptly moved for intervention after learning of the Board's decision. Energy Transfer filed its petition to intervene 13 days after the settlement was executed and before any action was taken to close the proceeding. Thus, because Energy Transfer did not seek "to intervene months after learning of the court's decision" like the intervenors in *Brigham Oil & Gas*, 2011 ND 154, ¶ 42, we conclude there is no indication that the orderly processes of the Board would suffer substantial interference to justify denying post-settlement intervention.

[¶20] Lastly, Energy Transfer has demonstrated it has "legal rights, duties, privileges, immunities, or other legal interests [that] may be substantially affected by the proceeding" to allow intervention to be granted pursuant to N.D.C.C. § 28-32-28. The courts that have addressed intervention for document management issues hold that non-parties may intervene for the purpose of protecting their legal interest in disclosure of allegedly privileged materials. *See, e.g., United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) ("Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer 'the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard.'"); *North Valley Bancshares, Inc. v. Raines*, No. CT20090028, 2009 WL 3542209, at *1–3 (Ohio Ct. App. 2009) (reversing lower court's denial of intervention where failed intervenor sought to protect his interest in preventing disclosure of privileged information); *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 758 A.2d 916, 927 (Conn. App. Ct. 2000) (reversing judgment denying motion to intervene and directing "the seven priests on remand are to be granted intervention for the *unique* purpose of contesting the disclosure of private, confidential files and issues relating to this interest").

[¶21] Energy Transfer has satisfied the requirements set forth in N.D.C.C. § 28-32-28. The Board misinterpreted and misapplied the law because it denied intervention based upon the "mere fact" that a settlement in the administrative action had been entered. The Board's order also was not the product of a rational mental process leading to a reasoned determination, because it failed to articulate a rational reason that the existing parties could be prejudiced or that the Board's orderly processes would suffer a substantial interference. We conclude the Board abused its discretion in denying Energy Transfer's petition to intervene.

B

[¶22] The Board also made findings regarding its statutory authority to address and provide the relief sought by Energy Transfer in its petition. We now address those findings.

10

[¶23] The Board "determined it was not the appropriate body to address this matter, which includes private contract disputes between two private parties as it falls outside its statutory authority." We conclude that the Board's classification of this matter as a contract dispute is erroneous. This matter involves a dispute regarding documents TigerSwan was compelled to produce in the administrative action against the Board. To the extent there are contract claims between Energy Transfer and TigerSwan, the Board was correct that it was not the appropriate venue to resolve those claims; however, the petition to intervene asserted not contract claims but claims the documents were not subject to disclosure under the open records law. Therefore, this matter did not fall outside the Board's statutory authority.

[¶24] Further, the Board determined it could not issue a protective order regarding the disputed documents in this matter. However, N.D.C.C. § 28-32-33(2) authorizes an administrative hearing officer to "issue subpoenas, discovery orders, and protective orders in accordance with the North Dakota Rules of Civil Procedure." "If a party or a nonparty from whom discovery is sought claims privilege, a hearing officer may issue a protective order precluding disclosure of the privileged information or requiring disclosure in a designated way." *Med. Arts Clinic, P.C. v. Franciscan Initiatives, Inc.*, 531 N.W.2d 289, 297 (N.D. 1995). Section 28-32-27(1), N.D.C.C., sets forth that a hearing officer is not limited to an administrative law judge but also includes "[a]ny person or persons presiding for the agency in an administrative proceeding." Therefore, because the Board decided to take up the document dispute, it had statutory authority to issue a protection order. We conclude that the Board's findings regarding its statutory authority to address and provide the relief sought by Energy Transfer in its petition are not supported by the law.

IV

[¶25] Because we conclude the Board erred in denying Energy Transfer's petition to intervene, a remand is necessary for the Board to assess Energy Transfer's claims regarding the produced documents. While we held in *Energy Transfer LP v. North Dakota Private Investigative & Security Board,* 2022 ND

84, ¶ 23, that the produced documents are subject to open records and record retention laws, we also recognized that individual documents or parts of documents may be withheld from disclosure if they fall within a statutory exemption. Thus, we remand to the Board for further proceedings.

V

[¶26] We reverse the district court's order dismissing Energy Transfer's appeal for lack of standing, and we reverse the Board's order denying intervention and remand for further proceedings.

[¶27] Jon J. Jensen, C.J.
    Gerald W. VandeWalle
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte